## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-CA-01508-SCT

*ANNE C. LEVENS*

*v.*

*CINDY CAMPBELL, W.R. BURTON, VIRGINIA LADNER AND MEMORIAL HOSPITAL AT GULFPORT*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/04/97 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | FLOYD J. LOGAN |
| | CARTER O. BISE |
| ATTORNEYS FOR APPELLEES: | WILLIAM M. RAINEY |
| | ROGER T. CLARK |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 1/21/99 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SULLIVAN, P.J., BANKS AND ROBERTS, JJ.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. Appellant contests the granting of summary judgment to all defendants in an action for wrongful discharge or failure to employ and tortious interference with a contract. We conclude that appellant's claim was not time-barred, that an at-will employee may have a cause of action for tortious interference with contract or conspiracy, and that not all the defendants were entitled to qualified immunity. We affirm, nevertheless, because we conclude that the evidence indicated does not support a viable substantive claim.

## I.

¶2. Memorial Hospital ("MHG") is a community hospital located in Gulfport, Mississippi. Ron Burton has served as Administrator/Chief Executive Officer of MHG since 1977. Cindy Campbell is the Chief Operating Officer and has served in that capacity since 1990. Virginia Ladner is the Director of Quality and Risk Management at MHG. From November 1985 through December 1990, Anne Levens was an employee of MHG, working as a Registered Nurse ("RN") in the neurosurgery unit, and subsequently, as

an Administrative Supervisor.

¶3. Around November 1988, during her employment at MHG, Levens executed an employee statement acknowledging her agreement to employment conditions as stated in MHG's Employee Policy Guide. The Employee Policy Guide provided that MHG maintained the right to "reprimand, suspend, discharge, or otherwise discipline employees, with or without cause; to hire, terminate promote, demote. . . employees to work for any reason that is in the best interests of the hospital." In 1990, Levens left MHG and moved to Jackson, Mississippi to work at University Medical Center ("UMC") after her divorce from Jerry Levens. She worked at UMC until October of 1991, at which time she moved to Long Beach, Mississippi and went to work in the pediatric intensive care unit for Children's Hospital located in New Orleans, Louisiana.

¶4. Sometime before March 18, 1992, Levens was contacted by her friend Diane Black Smith, who was an RN at MHG at that time. Smith informed Levens that Amy Sheffield, the Director of the Pediatric Nursing Department at MHG, had requested she call Levens to see if she would be interested in a RN position that was available at MHG. On March 18, 1992, Levens met with Sheffield to discuss the possibility of a job opening in the pediatric unit. During this meeting, Sheffield described the shift, 3 p.m. to 11 p.m., to Levens with no discussion of the salary. Sheffield did tell Levens to go ahead and fill out an application for employment, and that she would inform Melodie Griffith, the professional recruiter for MHG, that she was interested in her. Sheffield admitted that she did inform the recruiter to make an offer to Levens. Levens, in deposition testimony, testified that Sheffield offered her the RN position and told her she was hired after Levens accepted at the March 18th meeting.

¶5. On March 20, 1992, Levens completed an employment application with Griffith, who then offered Levens a job as a full time RN on the 3:00 to 11:00 p.m. shift. Levens supplied information on the application such as personal data, educational background, employment history. The employment application also had a section which provided that employment was contingent on the applicant meeting MHG's physical requirements, that the application was not an employment contract, and that employment and compensation could be terminated, with or without notice, at any time at the option of the hospital or the applicant. This section stated in pertinent part that:

> I understand that employment is contingent upon meeting the Hospital's physical requirements. I understand that this is an application for employment and not an employment contract. If employed, I understand that my employment and compensation can be terminated with or without notice, at any time, at the option of the hospital or myself. . .

Levens did accept the position. Griffith then explained Levens' salary, orientation date, and starting date, which was April 13, 1992.

¶6. On March 29, 1992, Sheffield telephoned Levens at home to tell her she could no longer offer her the RN position and that there was a hiring freeze on pediatrics. Sheffield testified in deposition testimony that after Anne was hired, she received a call, from Assistant Administrator Faye Anderson, who expressed concern over the hiring of Levens because Levens' ex-husband was presently intimately involved with Cindy Campbell (Levens), Chief Operating Officer at MHG. The two married in January 1993. Anderson, who had previously worked in a similar situation, was fearful that problems might arise in the workplace due the present situation involving Anne Levens and Cindy Campbell. Sheffield testified that for this reason, Anderson informed her there was a freeze on hiring. Anderson instructed her to notify Anne Levens of the freeze and that she could not start work. Campbell (Levens) asserted in deposition testimony that other

than asking Anderson whether Levens had been discussing possible employment at MHG, she spoke to no other MHG employees about the situation.

¶7. On April 1, 1992, MHG received a demand letter from Nicholson and Nicholson law firm on behalf of Anne Levens. It was at this time that Virginia Ladner, Director of Quality and Risk Management, became aware of Levens' completed employment application. After MHG received the April 1, 1992 letter from Nicholson and Nicholson, Ladner inquired into prior activities/actions of Levens while she was a former employee.

¶8. Anne Levens commenced action against MHG, Cindy Campbell (Levens), W.R. Burton, and Virginia Ladner on June 30, 1993. Cindy Campbell Levens, Burton, and Ladner thereafter filed Motions to Dismiss and for Summary Judgment, to which MHG filed a joinder. After Levens amended her complaint, MHG filed its Motion for Summary Judgment on the issue of failure to employ, while the remaining defendants filed Supplemental Motions to Dismiss and for Summary Judgment. Included in Levens' response to these motions was the affidavit of Diane Smith, which the defendants below moved to strike.

¶9. The trial court granted defendants' Motion to Strike the affidavit of Smith, and granted the defendants' motions for Summary Judgment. The trial court found Levens' complaint and amended complaint to be time barred pursuant to a one-year statute of limitations under Miss. Code Ann. § 15-1-29 and §15-1-35. In his opinion, the chancellor ruled that assuming Levens was employed by MHG, she was an "at will" employee with no cause of action for wrongful termination; that an "at will" employee relationship cannot be interfered with by third parties, and no cause of action arises against a third party when an "at will" employee is terminated; assuming Levens was employed at MHG, a party to a contract cannot be a charged with interfering with his own contract; that conspiracy is not a cause of action in Mississippi, and that Levens could have been terminated by MHG for any reason either as an employee at will or based on a ninety day probationary period of employment recognized by MHG. Aggrieved, Levens now appeals to this Court for relief.

## II.

¶10. This Court conducts a de novo standard of review when considering a lower court's grant of summary judgment. *Short v. Columbus Rubber & Gasket Co.,* 535 So. 2d 61, 63 (Miss. 1988). This entails reviewing all the evidentiary matters before it the light most favorable to the party against whom the motion has been made. *Aetna Cas. & Sur. Co. v. Berry*, 669 So. 2d 56, 70 (Miss. 1996). If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should be affirmed; otherwise, it should be reversed. *Short v. Columbus Rubber & Gasket Co.*, 535 So. 2d at 63.

## III.

¶11. Levens asserts that the trial court erred in making factual findings on disputed facts, and in striking portions of the affidavit of Diane Smith as hearsay. The affidavit of Diane Smith, attached in support of Levens' Response to the Motions for Summary Judgment, stated in relevant part:

> Amy Sheffield told me that she had gone to talk with Cindy Campbell about the hiring of Anne Levens, and "had it out with her" over Cindy Campbell's interference with Amy Sheffield's selection of Anne Levens to work in Pediatrics. Amy Sheffield told me that Cindy Campbell told her that she did not want Anne Levens working in "her" hospital because she (Anne Levens) was coming there just to

cause her (Cindy Campbell) grief.

Amy Sheffield later told me that she and Faye Anderson had talked, and Faye Anderson had directed Amy Sheffield to tell Anne Levens that there was a hiring freeze on. Amy Sheffield told her that it was Faye Anderson's information to her that even though there was no hiring freeze, that there was to be a hold put on hiring for 3A "until this blew over", even though there was none when the position was offered to Anne Levens.

¶12. The trial court struck the foregoing as inadmissible hearsay. Levens argues admissibility under M.R.E. 801(d)(2)(D). Under this rule, "A statement is not hearsay if. . . .(2) Admission by Party-Opponent. The statement is offered against a party and is. . .(D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship." M.R.E. 801(d)(2)(D).

¶13. While most affidavits are hearsay, they are nevertheless properly considered on summary judgment motions as long as they are based on personal knowledge and set forth facts such as would be admissible in evidence. *Stewart v. Southeast Foods*, *Inc.,* 688 So. 2d 733, 734 (Miss. 1996 ); M.R.C.P. 56(e). In that the statement by Smith as to Cindy Campbell is offered to prove Cindy Campbell told Amy Sheffield she did not want Anne Levens working in the hospital, which Levens asserts led to her not being hired, this portion of the affidavit does constitute inadmissible hearsay. However, as to the hospital, the remaining portion of the affidavit pertaining to information that Sheffield was instructed to relay to Anne Levens is an admission made for the hospital by Sheffield. As such, this statement is not hearsay and should not have been stricken. Miss. R. Evid. 801(d)(2)(D).

## IV.

¶14. Levens argues the trial court erred in finding her breach of contract claim against MHG was based on an unwritten contract of employment, or in the alternative, failure to employ, both being barred by a one-year statute of limitations.

*a.*

¶15. Miss. Code Ann. § 15-1-29 states in pertinent part that,"an unwritten contract of employment shall be commenced within one (1) year next after the cause of such action accrued, and not after." Miss. Code Ann. § 15-1-29 (1995). On written contracts, however, there is a three year limitations period. *See* Miss. Code Ann. § 15-1-49 (1995). This Court has held that the traditional features of an employment contract are (1) consent of the parties, (2) consideration for the service rendered, (3) and control by the employer over the employee. *Walls v. North Mississippi Med. Ctr.*, 568 So. 2d 712,715 (Miss. 1990). In *Sloan v. Taylor Machinery Co.*, 501 So. 2d 409 (Miss. 1987), this Court noted that where the written agreement is so indefinite that parol evidence is necessary to show a contractual relationship, the contract is unwritten and the limitations statute relating to written contracts is not applicable. *Sloan,* 501 So. 2d at 410. If the written agreement furnishes some objective standard by which its terms may be made definite and the contract complete, the contract is written. *Id*. at 411.

¶16. While Mississippi has not specifically ruled on whether an application for employment constitutes an employment contract, a California appellate court has held that a pre-printed, standardized employment application is not a contract. *Harden v. Maybelline Sales Corp.*, 282 Cal. Rptr. 96 (Cal. Ct. App. 1991)

. In reviewing a grant of summary judgment for Maybelline from a wrongful termination of employment brought by Harden, the California court found that an application for employment is a mere solicitation of an offer of employment, and as such it did not constitute a valid employment agreement because it did not contain essential terms such as the job description or compensation. ***Harden v. Maybelline Sales Corp.***, 282 Cal. Rptr. at 99. The clause at issue in Harden was an at will clause, which the court found not to be the final understanding between the parties, thereby reversing the trial court's grant of summary judgment. ***Id***.

¶17. In the present case, Levens completed application for employment with MHG on March 20, 1992, and submitted this application to Melodie Griffith on the same day. Both Griffith and Levens admit that after the application was submitted, Griffith offered Levens the RN position and she accepted. However, the fourth page of the application, designated for hospital use only, contained the hiring information section. This section was filled out by Griffith after Levens was hired. This section did contain the starting date of employment, April 13, 1992; job title, RN; Department, Pediatrics; Full-time; Basic Hourly Rate, $16.99; and shift, 3-11 p.m.

¶18. Levens argues that this writing was sufficient to take it out of the one year limitations period of § 15-1-29. She contends the writing, which set up the position, salary, start date, and department was effective as a writing governed by the three year statute of limitations for written contracts. The appellees assert that because the employment application expressly stated "this is an application for employment and not an employment contract," Levens' claim is time-barred.

¶19. We conclude that while this writing will not disaffirm employment- at-will status, the hiring information section of the application contains sufficient information for the document to constitute a writing for purposes of the statute of limitations. This section, completed after Levens was hired, clearly establishes that Levens was to receive $16.99 per hour as a full time, Registered Nurse in Pediatrics. It also sets out that she was to begin work on April 13, 1992 on the 3-11 shift. We hold that this is a writing which defeats the one year limitations period of § 15-1-29.

*b*.

¶20. Appellees assert, in the alternative, that Levens' claim is barred by Miss. Code Ann. § 15-1-35. Under this section, "All actions . . . .for failure to employ. . .shall be commenced within one (1) year next after the cause of such action accrued, and not after". Miss. Code Ann. § 15-1-35 (1995). This statute is not applicable in this case, in that the facts show Levens was hired. She never actually worked, however, because she was instructed by Amy Sheffield not to report to work on her start date. Moreover, Levens' complaint does not allege failure to employ, but rather, she contends breach of contract, actions relating to interference with employment and misrepresentation. Thus, we conclude that the trial court erred in finding § 15-1-35 applicable.

**V**.

¶21. This brings us to the question of whether the trial court erred in determining that an at-will employee has no cause of action available for wrongful termination, tortious interference with contract, conspiracy, or for fraudulent or negligent misrepresentation.

*a*.

¶22. Levens argues that Cindy Campbell tortiously interfered with contractual relations between Levens and MHG. Levens asserts that because Campbell was involved in a relationship with Levens' ex-husband, Campbell maliciously created a hiring freeze that effectively prevented Levens from maintaining employment with MHG. Levens alleges that but for tortious interference by Campbell, she would have been able to begin work at MHG.

¶23. A cause of action for tortious interference with a contract generally will lie against one who maliciously interferes with a valid and enforceable contract. *Collins v. Collins*, 625 So. 2d 786, 790 (Miss. 1993). In *Shaw v. Burchfield*, 481 So. 2d 247 (Miss. 1985), this Court held that our law recognizes a right of recovery for one whose contractual relationship has been tortiously interfered with, finding that "[o]ne who intentionally and improperly interferes with the performance of a contract between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for pecuniary loss resulting to the other from the failure of the third person to perform the contract." *Id.* at 254-55. However, "one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person." *Id.* at 255.

¶24. It is also the law in Mississippi that absent an employment contract expressly providing to the contrary, an employee may be discharged at the employer's will for good reason, bad reason, or no reason at all, excepting reasons only declared legally impermissible. *Shaw v. Burchfield*, 481 So. 2d at 254 (citing *Mississippi Employment Sec. Comm'n v. Philadelphia Mun. Separate Sch. Dist.*, 437 So. 2d 388, 397 (Miss. 1983)). The Appellees cite *Shaw* for the proposition that Mississippi does not recognize a tortious interference with contract claim in at will contracts of employment, which they argue, alternatively, Levens was. *Shaw* does not hold this, even though we take notice that there are some jurisdictions, cited in *Shaw*, which fail to recognize such a claim. Those cases, however, are premised on the fact that there can be no tortious interference with a contract when there has been no breach of the contract. *See Luisoni v. Barth*, 137 N.Y.S. 2d 169, 172 (1954); *Kingsbery v. Phillips Petroleum Co.*, 315 S.W.2d 561 (Tex. Civ. App. 1958).

¶25. "One who intentionally and improperly interferes with the performance of a contract... between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him." Restatement Second of Torts § 766A (1979). This section does apply to contracts terminable at will. *Id.* at cmt. d. There are numerous cases from other jurisdictions which make it clear that at will contracts of employment are subject to a tortious interference claim. We look to those jurisdictions for guidance on this issue.

¶26. In evaluating an at-will employee's claim for wrongful discharge, the Texas courts held that an at-will employment agreement can be the subject of a claim for tortious interference with an employment contract. *Fleischer v. Pinkerton's, Inc*., No. 05-96-00628-CV 1998WL47782, at *5 (Tex. Ct. App. Feb. 9, 1998). Virginia has also recognized such a claim in *Duggin v. Adams*, 360 S.E. 2d 832 (Va. 1987). In *Storm & Assocs., Ltd. v. Cuculich*, 700 N.E.2d 202, 210 (Ill. App. Ct. 1998), the court held that an action for tortious interference with a contract which is terminable at will is better classified as one for intentional interference with prospective economic advantage. *Id.*

¶27. Following the law of the aforementioned jurisdictions, this Court concludes that a claim for tortious

interference with at-will contracts of employment is viable in this state as well. An action for tortious interference with contract ordinarily lies when a party maliciously interferes with a valid and enforceable contract, causing one party not to perform and resulting in injury to the other contracting party. ***Nichols v. Tri-State Brick & Tile Co.,*** 608 So. 2d 324, 327 (Miss. 1992) (citation omitted). The elements of tortious interference with a contract include: 1) the acts were intentional and willful; 2) that they were calculated to cause damages to the plaintiffs in their lawful business; 3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant; and 4)that actual loss occurred. ***Collins v. Collins***, 625 So. 2d 786, 790 (Miss. 1993). It must also be proven that the contract would have been performed but for the alleged interference. ***Par Indus., Inc. v. Target Container Co.***, 708 So. 2d 44, 48 (Miss. 1998).

¶28. It is clear from the facts that an employment relationship was formed, or at the very least contemplated to the extent that a third party could tortiously interfere. As Chief Operating Officer, Campbell had no authority over staffing, therefore, any actions taken by Campbell which may have interfered with Levens' employment would fall outside the chain of privilege referred to in ***Shaw***.

¶29. Reviewing the record, however, there is no evidence to suggest that Campbell did in fact tortiously interfere. Amy Sheffield asserted that she did not speak with Campbell concerning Levens' employment. Sheffield's discussions were with Faye Anderson, the assistant administrator, who Sheffield asserted never said anything specific as to anything Campbell may have said. Anderson, who made the decision that Levens should not work at the hospital in an effort to prevent disruption in hospital relations, stated that Campbell did not instruct her to stop Levens' employment. Campbell's deposition testimony was that she never spoke with Amy regarding Levens' employment, nor did she speak with Levens about employment with MHG.

¶30. There is no record evidence to show that Campbell tortiously interfered with Levens' employment. There is no proof that Campbell said or did anything to stop Levens' from working at MHG. It follows that because Levens failed to show that Campbell maliciously interfered with her employment, Levens' claim for tortious interference with contract fails.

*b.*

¶31. As to the conspiracy issue, Levens claims Ron Burton, Administrator at MHG, conspired with Cindy Campbell (Levens) to keep Anne Levens from working at MHG. She also alleges Virginia Ladner participated in the conspiracy by attempting to have incident reports from her prior employment with MHG inserted into Levens' personnel file.

¶32. "A conspiracy is a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully." ***Shaw v. Burchfield***, 481 So. 2d 247, 255 (Miss. 1985) (citing ***Mississippi Power & Light Co. v. Town of Coldwater***, 234 Miss. 615, 636, 106 So. 2d 375, 381 (1958)). Referring again to ***Shaw v. Burchfield***, this Court determined that civil conspiracy resulting in damage may well give rise to a right of recovery under our law, but there is no actionable conspiracy where all that is shown is the exercise in a lawful manner of a right to terminate a contract. ***Id.***

¶33. Although Mississippi does recognize this conspiracy cause of action in at will employment situations, the record does not reflect the elements necessary for a conspiracy. Thus, the trial court was correct in granting summary judgment on this conspiracy issue.

*c.*

¶34. Levens claims the alleged freeze on hiring constituted fraud, and that representations by the appellees made to her concerning a freeze constituted negligent misrepresentation and fraudulent misrepresentation.

¶35. The elements of fraud, which must be proven by clear and convincing evidence, include: 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity or ignorance of its truth; 5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; 6) the hearer's ignorance of its falsity; 7) his reliance on its truth; 8) his right to rely thereon; and 9) his consequent and proximate injury. *Martin v. Winfield*, 455 So. 2d 762, 764 (Miss. 1984). In order to establish fraudulent misrepresentation, the elements of fraud must be proven. *Spragins v. Sunburst Bank*, 605 So. 2d 777, 780 (Miss. 1992).

¶36. Levens was informed by Amy Sheffield that there was a hiring freeze in the pediatrics unit, and therefore she could not begin work. After Sheffield informed Levens of the freeze, she met with Cathy Wood, Director of Human Resources, who told her there was a hiring freeze, and that there were no positions available for her at the hospital.

¶37. Addressing the appellees individually, there is no record evidence to support a fraud claim against Ron Burton. Levens tried to contact Burton to discuss her employment situation with him, but her call was referred to human resources as a personnel matter. This being the only evidence in the record concerning any involvement of Burton, Levens failed to show evidence which would clearly and convincingly establish a fraud claim against him, which results in her failure to establish a fraudulent misrepresentation claim against him.

¶38. These claims fail against the remaining appellees as well. Ladner, who reported to Burton, did not discuss the situation with Levens at all, and did not become informed of her completing an application for employment until after the demand letter was sent to MHG. Ladner never communicated to Levens there was a hiring freeze and by affidavit stated she had no involvement with Levens obtaining employment with the hospital. Campbell, in her deposition testimony, asserted that she never spoke with anyone about this matter other than Faye Anderson, who shared with Campbell her concerns about a possible operational conflict at the hospital and the overstaffing of the pediatrics unit. Anderson, as Administrator, told Sheffield about the hiring freeze.

¶39. There is no record evidence that Sheffield discussed the matter with Campbell, and Anderson asserted that Campbell did not request that she take any action to prevent Levens from obtaining employment with MHG. Levens also asserted she had no personal knowledge of Campbell's involvement. Moreover, there is no evidence to show that anyone was even put in the position Levens applied for. Because Levens failed to sustain her burden of proof of the element of fraud and fraudulent misrepresentation, we hold that the trial court acted properly in dismissing these claims.

¶40. Finally, Levens asserts a negligent misrepresentation claim. To recover on a cause of action based on negligent misrepresentation, Levens must prove by a preponderance of the evidence: 1) a misrepresentation or omission of a fact; 2) that the representation or omission is material or significant; 3)failure to exercise reasonable care on the part of the defendant; 4) reasonable reliance on the misrepresentation or omission; and 5)damages as a direct result of such reasonable reliance. *Spragins v. Sunburst Bank*, 605 So. 2d 777, 779 (Miss. 1992).

¶41. Levens contends the Appellees misrepresented that there was a freeze on hiring at MHG. She argues that because of the material misrepresentations of the appellees, she lost her preferred position at Children's Hospital in New Orleans. She further argues that Ron Burton was negligent in supervising and controlling the conduct of the hospital employees.

¶42. Based upon review of the record on appeal, Levens failed to establish the necessary proof to pursue these claims against the appellees as well. Levens has not presented indication of evidence that either of the appellees misrepresented that there was a hiring freeze. Levens was informed of the hiring freeze by Amy Sheffield initially, then by Cathy Wood, the Director of Human Resources at MHG. However, there is nothing to suggest the freeze was a factual misrepresentation, a necessary element for a negligent misrepresentation claim. In that Levens failed to show misrepresentation, this assignment is without merit.

¶43. Levens alleges that under § 41-13-36, Burton had a duty to supervise and control the actions of the hospital employees. She asserts he is liable for negligently carrying out this duty. Contrary to her assertions, the record is lacking in evidence that Burton was negligent in any regard. As such, this issue is without merit.

## VI.

¶44. Levens contends the trial court erred in finding she had no constitutionally protected interest in employment under 42 U.S.C. § 1983.

¶45. "Where there is no express contract of employment, a valid claim of entitlement must be grounded in some other legal source, such as a state statute or local ordinance, or an implied contract." ***Harrison County Sch. Bd. v. Morreale***, 538 So. 2d 1196, 1199 (Miss. 1989). "The Constitution, standing alone, confers no property right in continued employment." ***Id.*** (citing ***Board of Regents v. Roth***, 408 U.S. 564, 577 (1972)). This Court has held that where there is no employment contract or where there is a contract which does not specify the term of the worker's employment, the relation may be terminated at will by either party. ***Perry v. Sears, Roebuck & Co.***, 508 So. 2d 1086, 1087 (Miss. 1987).

¶46. The employment application stated that it was not an employment contract, and although the application may constitute a writing sufficient for statute of limitations purposes notwithstanding this language, the writing nevertheless confirms that Levens was an employee at will. Because Levens was an employee at will, she had no valid claim of entitlement in employment. Without an entitlement to employment, Levens had no property interest. For this reason, this issue is without merit.

¶47. Although she did not raise the issue in the trial court, Levens now asserts that she had a statutory property right under Miss. Code Ann. § 41-13-36 (1993), which gives the administrator of the community hospital the power to "employ and discharge employees, as needed for the efficient performance of the business of the community hospital." In that this issue was not presented to the trial court for consideration on the summary judgment motion, this issue is waived. Moreover, we do not view the statute as creating a property right in employment.

¶48. Levens also contends that absent a rule or statute granting her a property right, she has a due process right because of alleged damage to her reputation. Although there may be a protected due process interest in an individual's reputation, as claimed by Levens, this issue is devoid of merit in this case, as no evidence of damage to Levens' reputation has been shown. *See **Hall v. Board of Trustees of State Insts. of Higher Learning**, 712 So. 2d 312 (Miss. 1998).*

# VII.

¶49. Levens last assignment is that the appellees herein should not be entitled to qualified and/or discretionary immunity. The trial court ruled, alternatively, that as employees of MHG, a community hospital, the appellees were entitled to qualified and/or discretionary function immunity.

¶50. Qualified immunity provides public officials protection from suits resulting from the performance of discretionary governmental functions. *Womble v. Singing River Hosp.*, 618 So. 2d 1252, 1263 (Miss. 1993).

¶51. Under Miss. Code Ann. § 41-13-36, Ron Burton's duties as administrator were " . . . . (a) To employ and discharge employees, as needed for the efficient performance of the business of the community hospital and prescribe their duties; (b) to supervise and control the records, accounts, buildings and property of the community hospital and all internal affairs, and maintain discipline therein, and enforce compliance with, and obedience to, all rules, bylaws and regulations adopted by the board of trustees for the government, discipline and management of said hospital, and its employees and staff." Miss. Code Ann. § 41-13-36 (1993).

¶52. Although Burton's duties as to employee hiring are discretionary, we conclude that based on the affidavits and deposition testimony, Burton had no role in any employment decision as it relates to Levens, but was merely sued by virtue of his official capacity. Therefore, immunity does apply to him.

¶53. As to Virginia Ladner, Director of Quality and Risk Management and Cindy Campbell, Chief Operating Officer, no viable cause of action remains with respect to either of them. Thus, we find no need to address qualified immunity as to those parties.

# VIII.

¶54. For the reasons stated above, the judgment of the circuit court is affirmed.

¶55. **AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**