Denise HOWARD, Lena Chambers, Priscilla Chalmers, Betty Whitley, Faye Denise Logan, Carol Buseck, Kelvin Johnson, Phillip Gordon, Debbie Gordon, Alisha F. Wilson, Margaret Haymon, Wanda Allen, Monroe Hoggatt, Eugene Haymon, and Eva Parker Hall Plaintiffs

v.

CITIFINANCIAL, INC., a Maryland Corporation F/K/A First Family Financial Services, Inc., CitiFinancial, Inc., a Maryland Corporation F/K/A Commercial Credit of Mississippi, Inc., CitiFinancial, Inc., a Tennessee Corporation F/K/A First Family Financial Services, Inc., CitiFinancial, Inc., a Tennessee Corporation F/K/A Commercial Credit of Mississippi, Inc., CitiFinancial Services, Inc., a Georgia Corporation, Union Security Life Insurance Company, American Security Insurance Company, Tracy Mitchell, Darla Farmer, Valerie Stevens, and John Does 1–50 Defendants

No. CIV.A.3:01–CV–471BN.

United States District Court,
S.D. Mississippi,
Jackson Division.

March 13, 2002.

Thandi Wade, Joe N. Tatum, Tatum & Wade, PLLC, Jackson, MS, for plaintiffs.

Robert H. Walker, Fred Krutz, III, Daniel J. Mulholland, Bonnie Bridgers Smith, Forman, Perry, Watkins, Krutz & Tardy, Jackson, MS, for CitiFinancial, Inc., Maryland Corp., CitiFinancial, Inc., Tennessee Crop., CitiFinancial, Georgia Corp., Tracy Mitchell, Valerie Stevens, defendants.

Randy L. Dean, Walter D. Willson, Wells, Marble & Hurst, Jackson, MS, for Union Security Life Ins., American Security Ins. Co., defendants.

## OPINION AND ORDER

BARBOUR, District Judge.

This cause is before the Court on the Motion of Plaintiffs to Remand. Having considered the Motion, Response, Rebuttal, attachments to each, and supporting and opposing authority, the Court finds that the Motion is not well taken and should be denied.

## I. Background and Procedural History

Plaintiffs all entered loan agreements with either Defendants CitiFinancial, Inc., f/k/a First Family Financial Services, Inc., Defendants CitiFinancial, Inc., f/k/a Commercial Credit of Mississippi, Inc., or CitiFinancial Services, Inc. (collectively "CitiFinancial").[1] In conjunction with the loans, Plaintiffs purchased various insurance policies through Defendants Union Security Life Insurance Company ("Union Security") and/or American Security Insurance Company ("American Security") (collectively "Insurance Defendants").

On May 9, 2001, Plaintiffs filed a complaint in the Circuit Court of Holmes County, Mississippi, against CitiFinancial, the Insurance Defendants, Tracy Mitchell ("Mitchell"), Darla Farmer ("Farmer") and Valerie Stevens ("Stevens") (collectively "individual Defendants").[2] Plaintiffs allege that, "[c]ontrary to law, the Defendants required collateral protection insurance, credit life insurance, credit accident and health insurance, accidental death and dismemberment insurance, involuntary unemployment insurance, property insurance, and/or other insurance in connection with their loans to Plaintiffs." Complaint, ¶ 29. Plaintiffs also allege that the premiums paid for the allegedly required insurance products were excessive in comparison to similar products on the market, and that they were not offered alternative, and presumably less costly, insurance. Plaintiffs

1. Plaintiffs Denise Howard ("Howard"), Wanda Allen ("Allen"), and Eva Parker Hall ("Hall") voluntarily dismissed their claims against all Defendants without prejudice on September 20, 2001. Plaintiff Betty Whitley voluntarily dismissed her claim against all Defendants without prejudice on January 3, 2002.

2. Mitchell, Farmer and Stevens are or were licensed insurance agents of CitiFinancial.

allege that the premiums were inflated because of undisclosed commissions and other remuneration received from the Defendant insurers for selling their policies. Plaintiffs further allege that Defendants engaged in insurance packing, padding, flipping, and churning in violation of Mississippi law. Based on this conduct, Plaintiffs allege claims of breach of fiduciary duty, breach of implied covenants of good faith and fair dealing, fraudulent and negligent misrepresentation and/or omission, civil conspiracy, negligence, and unconscionability under the Uniform Commercial Code of Mississippi ("UCC").

On June 11, 2001, the CitiFinancial Defendants and Insurance Defendants removed the lawsuit to this Court pursuant to 28 U.S.C. § 1441 on the basis of diversity of citizenship jurisdiction under 28 U.S.C. § 1332.[3] For the purpose of diversity analysis, Defendant CitiFinancial, Inc., f/k/a First Family Financial Services, Inc., and Commercial Credit of Mississippi, Inc., are Maryland corporations with their principal places of business in Maryland. Defendant CitiFinancial, Inc., f/k/a First Family Financial Services, Inc., and Commercial Credit of Mississippi, Inc., are Tennessee corporations with their principal places of business in Tennessee. Defendant CitiFinancial Services, Inc., is a Georgia corporation with its principal place of business in Georgia. Defendants Union Security and American Security are Delaware corporations with their principal places of business in Georgia. Defendants

Tracy Mitchell, Darla Farmer, and Valerie Stevens are citizens of Mississippi. Defendants contend that Plaintiffs have fraudulently joined the non-diverse Defendants to avoid federal jurisdiction and, therefore, the Court may properly assert federal subject matter jurisdiction over this case. Plaintiffs filed the instant Motion to Remand on July 6, 2001.[4]

## II. Fraudulent Joinder Standard

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed ... to the district court of the United States for the district and division embracing the place where such action is pending." The removing party has the burden of proving that the federal court has jurisdiction to hear the case. *See Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir.1993), *cert. denied*, 510 U.S. 868, 114 S.Ct. 192, 126 L.Ed.2d 150 (1993); *Laughlin v. Prudential Ins. Co.*, 882 F.2d 187, 190 (5th Cir.1989) (holding that the "removing party bears the burden of establishing federal jurisdiction."). In cases in which the removing party alleges diversity of citizenship jurisdiction on the basis of fraudulent joinder, "it has the burden of proving the fraud." *Laughlin*, 882 F.2d at 190; *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.1990), *cert. denied* 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990). To establish fraudulent joinder, the removing party must prove: (1) that

---

**3.** In their Notice of Removal, Defendants "reserve[d] the right to supplement [their] Notice of Removal by adding additional Plaintiffs who may be in bankruptcy or whose claims are property of their bankruptcy estates." Notice of Removal ¶ 14. Defendants filed supplements to their Notice of Removal on August 20, 2001, September 4, 2001, and September 7, 2001, adding the bankruptcies of Howard, Allen, and Parker, respectively. As these Plaintiffs were voluntarily dismissed, the Court need not decide the propriety of

such supplementation, nor consider their bankruptcies for jurisdictional purposes. *See Allen v. City Fin. Co.*, 224 B.R. 347, 353 (S.D.Miss.1998).

**4.** In response to the supplements of Defendants to their Notice of Removal, Plaintiffs amended their Motion to Remand on September 7, 2001, and September 17, 2001, to challenge the assertion of Defendants that subject matter jurisdiction existed based on the bankruptcies of Howard, Allen, and Parker.

there was actual fraud in the plaintiff's pleading of the jurisdictional facts or (2) that the plaintiff has no possibility of establishing a cause of action against the non-diverse defendant in state court. *Griggs v. State Farm Lloyds,* 181 F.3d 694, 699 (5th Cir.1999) (citations omitted); *Burden v. General Dynamics Corp.,* 60 F.3d 213, 217 (5th Cir.1995); *Cavallini v. State Farm Mutual Auto Ins. Co.,* 44 F.3d 256, 259 (5th Cir.1995).

When considering whether a non-diverse defendant has been fraudulently joined to defeat diversity of citizenship jurisdiction, courts should "pierce the pleadings" and consider "summary judgment-type evidence such as affidavits and deposition testimony." *See e.g. Cavallini,* 44 F.3d at 256. *See also LeJeune v. Shell Oil Co.,* 950 F.2d 267, 271 (5th Cir.1992) (holding that "a removing party's claim of fraudulent joinder to destroy diversity is viewed as similar to a motion for summary judgment.... A court is to pierce the pleadings to determine whether, under controlling state law, the non-removing party has a valid claim against the non-diverse parties."). Under this standard, plaintiffs "may not rest upon the mere allegations or denials of [their] pleadings." *Beck v. Texas State Bd. of Dental Examiners,* 204 F.3d 629, 633 (5th Cir.2000). *See also Badon v. RJR Nabisco, Inc.,* 236 F.3d 282, 286 n. 4 (5th Cir.2000) (finding that the "mere theoretical possibility of recovery under local law" does not preclude removal. Plaintiffs must show that there exists "a reasonable basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder."). Further, conclusory or generic allegations of wrongdoing on the part of the non-diverse defendant are not sufficient to show that that defendant was not fraudulently joined. *See Badon v. RJR Nabisco, Inc.,* 224 F.3d 382, 392–93 (5th Cir.2000); *Peters v. Metropolitan Life Ins. Co.,* 164 F.Supp.2d 830, 834 (S.D.Miss.

2001) (J. Bramlette) (holding that the allegations against non-diverse defendants "must be factual, not conclusory, because conclusory allegations do not state a claim."). Therefore, when responding to a charge of fraudulent joinder, a plaintiff must allege specific acts of wrongdoing on the part of the non-diverse defendant in the complaint and submit evidence to support those claims. *See Badon,* 224 F.3d at 390 (holding that removal is not precluded merely because the state court complaint, on its face, sets forth a state law claim against a non-diverse defendant. Removal is proper "if the plaintiff's pleading is pierced and it is shown that as a matter of law there is no reasonable basis for predicting that the plaintiff might establish liability on that claim against the instate defendant.").

When conducting a fraudulent joinder analysis, a court must resolve all disputed questions of fact and ambiguities of law in favor of the non-removing party, *see Dodson v. Spiliada Maritime Corp.,* 951 F.2d 40, 42 (5th Cir.1992), but "*only* when there exists an actual controversy, i.e. when *both* parties have submitted *evidence* of contradictory facts." *Badon,* 224 F.3d at 394. A court should not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts" to support his claims against the non-diverse defendant. *Id.* (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994)) (alteration in original). In the event the court, after resolving all disputed questions of fact and ambiguities of law in favor of the non-removing party, finds that there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder" and hence no basis for asserting diversity of citizenship jurisdiction. *Jernigan,* 989 F.2d at 816.

## III. Analysis

▉ As a preliminary matter, the Court considers Plaintiffs argument that the removal was untimely. Plaintiffs argue that Defendants were served with process on May 11, 2001 and that the 30 day time limit for removal under section 1446(b) expired on June 10, 2001. Plaintiffs argue that, because Defendants filed their Notice of Removal on June 11, 2001, the removal is untimely and this action must be remanded. The Court does not agree. While the thirtieth day was, indeed, June 10, 2001, Rule 6(a) of the Federal Rules of Civil Procedure provides in pertinent part, "The last day of the [time] period ... shall be included, unless it is a Saturday, a Sunday, or a legal holiday ... in which event the period runs until the end of the next day which is not one of the aforementioned days." As June 10, 2001, was a Sunday, the 30 day removal period ran until the end of Monday, June 11, 2001. The Court therefore finds that the removal was timely and that the Motion to Remand on this ground is not well taken and should be denied.

▉ Plaintiffs allege that as agents of CitiFinancial, Mitchell, Farmer, and Stevens may be held liable on the claims alleged in the Complaint. Under Mississippi law, an agent can incur independent liability if he engages in conduct which rises to the level of gross negligence, malice or reckless disregard for the rights of the plaintiff. *See Bass v. California Life Ins. Co.*, 581 So.2d 1087, 1090 (Miss.1991). The issue before the Court is whether there is a possibility that liability could be imposed on the non-diverse Defendants/agents based on the facts of the case.

### A. Are Plaintiffs' Claims Time Barred?

▉ The record shows that only Plaintiffs Carol Buseck ("Buseck"), Kelvin Johnson ("Johnson"), and Monroe Hoggatt ("Hoggatt") assert claims against the individual Defendants.[5] Defendants argue that Plaintiffs' claims are governed by the general, three year statute of limitations found at MISS. CODE ANN. § 15-1-49(1). Defendants also argue that statute of limitations began to run on Plaintiffs' claims on the date each Plaintiff took out their loans with Defendants. *See* Memorandum of Insurance Defendants in Opposition to Motion to Remand. That is, no general discovery rule tolled the statute as to Plaintiffs' claims.

Plaintiffs allege that they "were unaware of the Defendants' wrongful conduct ... and could not have at any time earlier [than the filing of their Complaint] discovered Defendants' wrongful conduct, which included Defendants' affirmative and fraudulent concealment of their wrongful conduct...." Complaint ¶ 28. Thus, Plaintiffs argue that the statute of limitation was tolled by the alleged fraudulent concealment of Defendants of their allegedly wrongful conduct.

▉ The Court finds that, as there are no periods of limitation prescribed by statute for the causes of action asserted by Plaintiffs, the general, three year statute of limitations is applicable to all of Plaintiffs' claims. The Court further finds that

---

5. As previously noted, Plaintiffs Betty Whitley, Denise Howard, Wanda Allen and Eva Parker Hall have been voluntarily dismissed from this action. Plaintiffs Lena Chambers, Priscilla Chalmers, Faye Denise Logan, Alisha F. Wilson, Margaret Haymon and Eugene Haymon stated in response to Interrogatory 4 propounded by the Insurance Defendants that they have no claims against the individual Defendants. *See* Response, Exhibit "C." Phillip Gordon and Debbie Gordon have stipulated that they have no claims against the individual Defendants. *See* Response, Exhibit "D."

the general statute of limitations may be tolled pursuant to Miss. Code Ann. § 15–1–67 (providing, "If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered"). Accordingly, the Court finds that, unless tolled by section 15–1–67, Plaintiffs' claims that accrued before May 9, 1998, are time barred. In order to determine whether the statute of limitations was tolled as Plaintiffs contend, the Court must consider each of Plaintiffs' loans with Citi-Financial, the insurance policies associated with each loan, the disclosures made by CitiFinancial with regard to each loan, and any affirmative acts whereby Defendants fraudulently concealed Plaintiffs' claims.

### 1. Plaintiff Buseck's Loans with Citi-Financial

 Plaintiff Buseck took out a number of loans between September of 1996 and July of 2001. Buseck avers that CitiFinancial loaned her $3,000 on September 25, 1996 ("the first loan"). See Rebuttal, Exhibit "14," Affidavit of Buseck. Buseck purchased no insurance with this loan, but refinanced the loan on February 27, 1997, "at the request of ... Mitchell" who told her that "in order for [her] to refinance [her] loan, [she] was required under [CitiFinancial] policy to purchase credit disability insurance, credit life insurance and property insurance." See id. Buseck avers that, at the time she signed for this loan, she "did not see or read any disclosure which indicated that credit insurance was not required in order for [her] to make this loan."

On May 5, 1997, Buseck took out a home mortgage loan with CitiFinancial. See id. Buseck refinanced her first loan into the mortgage loan and purchased credit life insurance with the new loan. See id. Buseck avers that she was told by Farmer "that in order for [her] to obtain the May 7, 1997, loan [she] would have to purchase credit life insurance in connection with the loan." Buseck avers that, at the time she signed for the mortgage loan, she "did not see or read any disclosure which indicated ... that credit insurance was not required in order for [her] to make th[e] loan...." See id.

 Defendants have submitted a disclosure statement signed by Buseck on May 5, 1997, as part of her mortgage loan which stated, "CREDIT LIFE OR CREDIT DISABILITY INSURANCE IS NOT REQUIRED TO OBTAIN THIS LOAN." See Response, Exhibit "A." Immediately above her signature appears the following: "I/WE HAVE READ THIS NOTICE AND HAVE MADE THE CHOICE ABOVE BEFORE SIGNING ANY NOTE OR OTHER PAPER REPRESENTING A LOAN." See id. It is well settled under Mississippi law that a contracting party is under a legal obligation to read a contract before signing it. See Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co., Inc., 584 So.2d 1254, 1257. See also Koenig v. Calcote, 199 Miss. 435, 25 So.2d 763 (1946); McCubbins v. Morgan, 199 Miss. 153, 23 So.2d 926 (1945). Moreover, knowledge of the contents of a contract will be imputed to a contracting party even though she did not read the contract before signing it. See Cherry v. Anthony, Gibbs, Sage, 501 So.2d 416, 419 (Miss.1987). Where, as here, the terms of a contract are made available to a contracting party, any reliance on alleged misrepresentations of those terms is, as a matter of law, unreasonable. See Carter v. Union Security Life Ins. Co., 148 F.Supp.2d 734 (S.D.Miss. 2001) (Lee, J.).

Plaintiffs refer the Court to an exception to the above stated rule set forth by the Mississippi Supreme Court in *Turner v. Terry*, 799 So.2d 25, 2001 WL 171318 (Miss.2001) (holding that, "[w]here one party's false representations *induce* another party to contract, negligence of the second party cannot be raised to bar relief to him. Thus, failure to read a contract before signing it ... will not bar equitable relief to one who has executed a contract in reliance upon false representations made to him by the other contracting party" (emphasis added)). The Court finds the exception inapplicable to the case *sub judice*, however. Plaintiffs do not allege that they were induced to contract by the representations of Defendants, but rather that they contracted with Defendants in spite of the alleged representations. The Court therefore finds that any claims Buseck had as to her mortgage loan with CitiFinancial accrued on May 5, 1997, the date on which she signed the disclosure statement, and are therefore barred by the statute of limitations. The Court further finds that any claim that Buseck had as to her first loan accrued no later than May 5, 1997, the date on which she indisputably had notice that credit life and credit disability insurance were not required to obtain a loan with CitiFinancial. *See* MISS. CODE ANN. § 15–1–67 (providing that "the cause shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered"). Therefore, any claims Buseck had as to her February 27, 1997, loan with CitiFinancial are also time barred.

■ On November 4, 1997, Buseck took out another loan with CitiFinancial. *See* Response, Exhibit "A1," Affidavit of Buseck. Buseck avers that Mitchell told her that the purchase of credit life and credit disability insurance were required in order for her to obtain a loan with CitiFinancial. *See id.* Buseck also avers that,

at the time she made the loan, she never saw or read any disclosure stating that credit insurance was not required in order to obtain the loan. *See id.* Defendants have not produced evidence that Buseck signed a disclosure statement with regard to this loan. However, based on the disclosure statement signed by Buseck on May 5, 1997, which stated that the purchase of credit life and credit disability insurance was optional, the Court finds that Buseck had notice on November 4, 1997, that she was not required to purchase insurance in connection with her loan. Therefore, the Court finds that any claims Buseck had as to her November 4, 1997, loan with CitiFinancial are barred by the statute of limitations.

Having found that Buseck's claims against CitiFinancial with regard to the loans listed above are time barred, and because Buseck did not purchase insurance with her CitiFinancial loans of July 30, 1999, or July 3, 2001, the Court finds that, as a matter of law, Buseck cannot prevail on any of her claims against the individual Defendants.

### 2. Plaintiff Hoggatt's Loans with Citi-Financial

Plaintiff Hoggatt took out a number of loans with CitiFinancial between August of 1997 and August of 1999. *See* Response, Exhibit "A2." However, he only purchased insurance in connection with the CitiFinancial loans of February 11, 1998, and August 25, 1999. None of the Defendants argue Hoggatt's August 25, 1999, loan with CitiFinancial is time barred.

■ As for his February 2, 1998, loan, Hoggatt avers that he borrowed $4,248 from CitiFinancial, and that "Farmer told me that in order for me to get the loan, I was required to purchase credit life, credit disability and personal property insurance." *See* Rebuttal, Exhibit "12," Affida-

vit of Hoggatt. Hoggatt avers that he is "unable to read and understand documents," and that he "did not read any disclosure which indicated that credit insurance was not required in order for [him] to make th[e] loan."[6] *See id.* Hoggatt testified, however, that he was not prevented from reading the contract, and that he did not ask Farmer any questions regarding the contract. *See* Response, Exhibit "A2." Hoggatt also testified that he was given a copy of the contract.

Defendants have submitted evidence showing that, on February 11, 1998, Hoggatt signed a Combined Note and Security Agreement which clearly provided that "Credit Life and Disability Insurance are NOT REQUIRED in connection with this loan and were not a factor in the approval of this extension of credit. If you chose to obtain life insurance through Lender ... the cost thereof is shown ... herein and is included in the Amount Financed." *See* Response, Exhibit "A2." As previously stated, a contracting party has a duty to read what he signs and will be charged with knowledge of what he signed even though he fails to read it. The rule that one "knows" what he signs does not change when one cannot read or has trouble reading. Rather, such a person has a duty to find someone to read the contract to him. Failure to do so is negligence. The Court therefore finds that any claims Hoggatt had as to the February 11, 1998

loan with CitiFinancial are barred by the statute of limitations.[7]

### 3. Plaintiff Johnson's Loans with CitiFinancial

Plaintiff Johnson avers that he took out loans with CitiFinancial in 1993 and 1995.[8] *See* Rebuttal, Exhibit "10," Affidavit of Johnson. With regard to each of these loans, Johnson avers that Mitchell told him that credit life, credit disability and property insurance were required in order to obtain the loan. *See id.* Johnson also avers that he did not see or read any disclosure indicating that such insurance was not required in order for him to obtain the loans. *See id.* Johnson alleges, however, Defendants affirmatively concealed their wrongful conduct, *see* Complaint ¶ 28, and that the statute of limitations on his claims was therefore tolled pursuant to section 15–1–67 of the Mississippi Code.

To establish a claim of fraudulent concealment under section 15–1–67, the Plaintiffs must (1) show "some act of an affirmative nature designed to prevent and which does prevent discovery of the claim," and (2) prove that "even though they acted with due diligence in attempting to discover [the claim], they were unable to do so." *Robinson v. Cobb,* 763 So.2d 883, 887 (Miss.2000). Johnson has not presented any evidence of an affirmative act by Defendants that prevented him from discovering his claims against them.

---

6. It is unclear to the Court whether Hoggatt cannot read or merely has trouble reading. When asked under oath if he had read the August 19, 1997, loan documents before signing them, Hoggatt testified that he did not. *See* Rebuttal, Exhibit "4." When asked why he did not read the contract before signing it, Hoggatt testified that he "couldn't see too good. You know, I can't see them little letters too good." *See id.*

7. The Court notes that Defendants referred to an April 3, 1998, loan taken out by Hoggatt,

but did not submit evidence of such a loan. Hoggatt does not aver or testify as to a loan with CitiFinancial originating on this date. Therefore, for purposes of this Motion, the Court does not consider any purported loan of April 3, 1998.

8. Defendants did not submit any documentary evidence regarding the 1993 or 1995 loans to Johnson. Johnson submitted a payment receipt for CitiFinancial loan number 53695580 initialed by "DF." The receipt is dated, but the date is illegible.

Rather, Johnson, by his averments, has shown that he was not diligent in attempting to discover his claims. *See* Rebuttal, Exhibit "10" (stating that "despite informing Tracy Mitchell [that he already had insurance coverage of the type] she was attempting to sell [him], Tracy Mitchell continued to tell [him] that in order for [him] to refinance [his] loan, [he] was required" to purchase insurance, and further stating that, in connection with his 1995 loan, Johnson asked Mitchell "why [he] . . . had to buy credit insurance again because [he] already carr[ied] each of these insurances"). The Court therefore finds that Johnson has not established a claim of fraudulent concealment and that the statute of limitations was not tolled as to his claims against Defendants. Accordingly, the Court finds that, as a matter of law, Johnson cannot prevail on any of his claims against the individual Defendants.

Having found that, as a matter of law, Plaintiffs Buseck and Johnson cannot prevail on their claims against the individual Defendants, the Court finds that the only claims before the Court are those relating to Hoggatt's August 25, 1999, loan with CitiFinancial for which Mitchell served as agent. The Court therefore finds that Defendants have satisfied their burden of showing that Plaintiffs cannot prevail on any of their claims against Farmer and Stevens.

## B. Plaintiffs' Breach of Fiduciary Duty Claim

 Plaintiffs allege that Defendants breached their fiduciary duty to Plaintiffs to (1) obtain adequate insurance at a fair and reasonable price, (2) act in the best interests of Plaintiffs, and (3) disclose to Plaintiffs that Defendants directly or indirectly received remuneration for the insurance policies they sold to them. Defendants argue that there is no reasonable possibility that Plaintiffs can succeed on their breach of fiduciary duty claims be-

cause Defendants did not owe the Plaintiffs any fiduciary duty as a matter of Mississippi law.

 The Mississippi Supreme Court has held that "fiduciary relationship is a very broad term embracing both technical fiduciary relations and those formal relations which exist wherever one person trusts in or relies upon another." *Hopewell Enters., Inc. v. Trustmark Nat'l Bank*, 680 So.2d 812, 816 (Miss.1996). Therefore,

> [w]henever there is a relation between two people in which one person is in a position to exercise a dominant influence upon the other because of the latter's dependency upon the former, arising from either weakness of mind or body, or through trust, the law does not hesitate to characterize such relationship as fiduciary in character. The basis of this relationship need not be legal; it may be moral, domestic, or personal.

*Id.* (quoting *Hendricks v. James*, 421 So.2d 1031, 1041 (Miss.1982)). Additionally, a "confidential relationship, which imposes a duty similar to a fiduciary relationship, may arise when one party justifiably imposes special trust and confidence in another, so that the first party relaxes care and vigilance that he would normally exercise in entering into a transaction with a stranger." *Lowery v. Guaranty Bank and Trust Co.*, 592 So.2d 79, 83 (Miss.1991). *But cf. Burley v. Homeowners Warranty Corp.*, 773 F.Supp. 844, 860 (S.D.Miss. 1990) (Lee, J.) (stating "there is no fiduciary relationship between an insurer and insured in a first-party contract").

Based on the evidence in the record, and supporting and opposing authority, the Court finds that, as a matter of Mississippi law, no fiduciary relationship existed between Mitchell and Hoggatt. The Court therefore finds that Defendants have satisfied their burden of showing that Hoggatt

cannot prevail on his claims of breach of fiduciary duty against Mitchell.

## C. Plaintiffs' Breach of Implied Covenants of Good Faith and Fair Dealing Claim

Plaintiffs allege that Defendants breached the implied covenants of good faith and fair dealing "by obtaining inadequate insurance for Plaintiffs and charging an exorbitant and grossly unfair premium which was far in excess of the market rate." Complaint, ¶¶ 70. Defendants argue that, because the individual Defendants were not parties to the subject insurance contracts, Plaintiffs cannot state a claim for breach of implied covenants of good faith and fair dealing. The Court agrees.

The duty of good faith and fair dealing is implied in the performance and enforcement of all contracts, *see Cenac v. Murry*, 609 So.2d 1257, 1272 (Miss.1992), but only "arises from the existence of a *contract* between parties." *American Bankers Ins. Co. of Florida v. Wells*, —— So.2d ——, ——, 2001 WL 1554028, * 9 (Miss.2001) (citing *Cenac*, 609 So.2d at 1272) (emphasis in original). Hoggatt contracted with the Insurance Defendants. As Mitchell merely served as the agent of the Insurance Defendants in the subject loan transaction and was not a party to the subject contract, the Court finds that Mitchell was not subject to the implied duty of good faith and fair dealing. *See Griffin v. Ware*, 457 So.2d 936, 940 (Miss. 1984) (stating that "adjusters employed by an insurer, who were not parties to the agreement for insurance, are not subject to an implied duty of good faith and fair dealing to the insured"). *See also Burley*, 773 F.Supp. at 860 (stating "there is no implied covenant of good faith in a first-party insurance contract"). Moreover, the breaches alleged go to the formation of the contract, rather than the performance and enforcement of the contract. Accordingly, the Court finds that, as a matter of law, Hoggatt cannot prevail on his claims of breach of implied duty of good faith and fair dealing against Mitchell.

## D. Plaintiffs' Fraudulent and Negligent Misrepresentation and/or Omission Claims

Plaintiffs allege that Defendants, by their deliberate and knowingly "fraudulent misrepresentations, omissions and concealment ... purposely deceive[d] Plaintiffs into believing that Defendants were obtaining and furnishing adequate credit life, credit disability, property and/or collateral protection insurance for them at a fair price...." Complaint ¶ 76. In order to succeed in a claim for fraudulent misrepresentation, a plaintiff must prove that: (1) defendant or his agent made a representation (2) that was false (3) and material (4) and that the person making the representation knew it to be false and (5) intended that the plaintiff act upon the representation in the manner reasonably contemplated. *See Levens v. Campbell*, 733 So.2d 753, 761-62 (Miss. 1999). A plaintiff must also prove that (6) he was unaware that the representation was false, (7) he relied on the truth of the representation, (8) had a right to rely on the representation, and that (9) he suffered consequent and proximate injury. *See id.* A claim of negligent misrepresentation requires proof that: (1) defendant failed to exercise reasonable care in making (2) a misrepresentation or omission of a fact that was (3) material or significant, and that plaintiff reasonably relied on the misrepresentation or omission and was (4) damaged as a result of his reasonable reliance. *See id.* at 762.

Defendants have submitted a disclosure statement signed by Hoggatt on August 25, 1999, as part of his CitiFinancial loan which stated, "CREDIT LIFE OR CRED-

IT DISABILITY INSURANCE IS NOT REQUIRED TO OBTAIN THIS LOAN." *See* Response, Exhibit "A." Immediately above his signature appears the following: "I/WE HAVE READ THIS NOTICE AND HAVE MADE THE CHOICE ABOVE BEFORE SIGNING ANY NOTE OR OTHER PAPER REPRESENTING A LOAN." *See id.* Hoggatt testified that he signed the August 25, 1999, contract with CitiFinancial, but did not read it. *See* Rebuttal Exhibit "4." Hoggatt also testified that he was not prevented from reading the contract, that he did not ask Mitchell any questions regarding the contract prior to signing it, and that he received a copy of the contract.

As previously stated by the Court with regard to Plaintiffs' fraudulent concealment defense, Hoggatt could not reasonably rely on a representation of Defendants contrary to the express language of the contract which he signed. *See* section "III.A.2." As both fraudulent and negligent misrepresentation claims require a finding by the Court of reasonable reliance on the alleged misrepresentation or omission, the Court therefore finds that, as a matter of law, Hoggatt cannot prevail on his claims of fraudulent or negligent misrepresentation against Mitchell.

### E. Plaintiffs' Civil Conspiracy Claim

Plaintiffs allege that "Defendants entered into a civil conspiracy with each other and insurance companies to sell credit life, credit disability, property and/or collateral protection insurance to Plaintiffs that was unnecessary and at an exorbitant premium far in excess of the market rate." Complaint ¶ 90. However, the United States Court of Appeals for the Fifth Circuit has held that

> [i]t is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the gen-

eral rule that the acts of the agent are the acts of the corporation.

*Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911 (5th Cir.1952). Therefore, unless "individual defendants are . . . shown to have acted outside of their employment capacities, they are incapable of conspiring with their corporate employer." *Cooper v. Drexel Chemical Co.*, 949 F.Supp. 1275, 1285 (N.D.Miss.1996). The Court finds no evidence in the record that Mitchell acted "outside [her] employment capacities" with regard to Hoggatt's claim of civil conspiracy. The Court therefore finds that, as a matter of law, Hoggatt cannot prevail on his claim of civil conspiracy against Mitchell.

### F. Plaintiffs' Negligence Claim

Plaintiffs allege that Defendants breached their "duty to . . . exercise reasonable care to ensure that Plaintiffs received credit life, credit disability, property and/or collateral protection insurance which was both adequately and fairly priced." Complaint ¶¶ 95–96. Plaintiffs allege that Defendants: failed to obtain adequate insurance for Plaintiffs, failed to obtain insurance at the prevailing market rate, charged an excessive interest rate and related charges for the subject insurance policies, and failed to provide Plaintiffs with a signed and dated copy of their insurance policies.

Defendants argue that the duties Plaintiffs allege were breached are essentially fiduciary duties and that failure to act where there is no duty to act is not negligence. The Court agrees. Having found that no fiduciary relationship existed between Plaintiffs and Defendants, *see* section "III.B.," the Court finds that Defendants had no duty to act or not act as Plaintiffs allege. Moreover, the Court finds no evidence in the record to show that Mitchell engaged in the conduct about

which Hoggatt complains, or which otherwise rises to the level of gross negligence, malice or reckless disregard for the rights of Hoggatt. The Court therefore finds that Hoggatt cannot prevail on his claim of negligence against Mitchell.

### G. Plaintiffs' Claim of Unconscionability Under the UCC

Plaintiffs allege that the "conduct, acts, and omissions of the Defendants constitutes [SIC] unconscionable practices, individually and collectively, under the UCC," Complaint ¶ 100, and seek both compensatory and punitive damages with regard to their unconscionability claim. Although not cited by Plaintiffs, the remedy for unconscionability under the UCC is set forth in section 75–2–302 of the Mississippi Code (providing that the court, upon a finding as a matter of law that the contract or any clause of the contract is unconscionable, refuse to enforce the contract, or enforce that part of the contract that is not unconscionable or limit the application of the unconscionable clause so as to avoid an unconscionable result). This section 75–2–302 only applies to the sale of goods, however. *See* MISS. CODE ANN. § 75–2–102 (providing that "this chapter applies to transactions in goods"). *See also Huff v. Hobgood,* 549 So.2d 951, 953 (Miss.1989) ("When one contracts for the sale of goods ..., the transaction is governed by the UCC as adopted in MISS. CODE ANN. §§ 75–2–101 to—725").

Goods are defined by the UCC as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale...." MISS. CODE ANN. 75–2–105(1). The Court questions whether an insurance policy fits within the definition of "goods." Plaintiffs have not referred the Court to authority supporting their contention that the sale of insurance is a transaction in goods governed by the UCC. To the contrary, most courts have held that an insurance policy is not goods as defined by the UCC. *See Bartley v. National Union Fire Ins. Co.,* 824 F.Supp. 624, 636 (N.D.Tex.1992) (finding that insurance contracts do not fit within the definition of goods promulgated by the Uniform Commercial Code); *Elrad v. United Life & Acc. Ins. Co.,* 624 F.Supp. 742, 744 (N.D.Ill.1985) (finding that, under the definition of "goods" adopted by Illinois, which is identical to the definition found at MISS. CODE ANN. § 75–2–105(1), life insurance contracts were not "goods" within the scope of the Uniform Commercial Code); *Oxford Lumber Co. v. Lumbermens Mutual Ins. Co.,* 472 So.2d 973, 978 (Ala.1985) (finding that the issuance of an insurance contract is a service, and not a product subject to the sales of goods provisions under the Uniform Commercial Code). *Compare Johnson Enter. of Jacksonville, Inc. v. FPL Group, Inc.,* 162 F.3d 1290, 1314 (11th Cir.1998) (finding the UCC inapplicable to a contract for the sale of services).

The Court therefore finds that the subject insurance contracts are not goods as defined by section 75–2–105 of the Mississippi Code. Accordingly, the Court finds that, as a matter of law, Hoggatt cannot prevail on his claim of unconscionability under the UCC against Mitchell.

### IV. Conclusion

Having found that Hoggatt cannot prevail on any of his claims against Mitchell, and having previously found that Plaintiffs cannot prevail on any of their claims against Farmer or Stevens, the Court finds that the individual Defendants were fraudulently joined as defendants in this action.[9] As all of the non-diverse Defen-

---

9. Having found that the individual Defendants were fraudulently joined as defendants in this action, the Court need not consider whether they were misjoined under MISS. R. CIV. P. 20 and 82(c).

dants in this case were fraudulently joined, their citizenship will not be considered for the purpose of diversity of citizenship jurisdiction analysis under 28 U.S.C. § 1332. Therefore, as the statutory requisites for diversity of citizenship jurisdiction are satisfied, the Court finds that it has federal subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

IT IS THEREFORE ORDERED that the Motion of Plaintiffs to Remand [6–1] is hereby denied.