Joe JENKINS, Plaintiff,

v.

FARMINGTON CASUALTY COMPANY, Porter's Insurance Agency, Inc. and Aetna Casualty and Surety Company, Defendants.

No. 3:97CV328LN.

United States District Court,
S.D. Mississippi,
Jackson Division.

July 10, 1997.

Frank D. Stimley, Craig D. Bluntson, Jackson, MS, for Plaintiff.

William Bruce Parker, Hamilton & Linder, Meridian, MS, Roger C. Riddick, Craig Robert Sessums, Upshaw, Williams, Biggers Beckham & Riddick, Jackson, MS, for Defendants.

G. Todd Burwell, Kirkland & Barfield, Jackson, MS, for Defendant Farmington Cas. Co.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

This cause is before the court on the motion of plaintiff Joe Jenkins to remand the case to the Circuit Court of Hinds County, Mississippi, from which it was timely removed by defendants Farmington Casualty Company (Farmington) and Aetna Casualty and Surety Company (Aetna) on the ground that plaintiff, a Mississippi resident, has fraudulently joined as a defendant a Mississippi company, Porter's Insurance Agency, Inc. (Porter's), in order to defeat diversity jurisdiction. Defendants have all responded in opposition to plaintiff's motion and the court, having considered the motion and responses, concludes that the motion to remand is not well taken and should be denied.

On September 25, 1995, defendant Farmington issued a policy of insurance to Joe Jenkins d/b/a Church's Fried Chicken which covered Jenkins' Church's Fried Chicken restaurant in Canton, Mississippi. Several months later, on February 2, 1996, a fire occurred at the insured location which resulted in fire and smoke damage to the building. Four days later, on February 6, a second fire occurred which plaintiff alleges totally destroyed the property. Following the fires, plaintiff made a claim under his policy for the losses caused by the fires. When no payment was forthcoming, he filed the present suit in state court on March 3, 1997 against Farmington, Aetna[1] and Porter's, a local insurance agency through which the policy was acquired, alleging generally that although he had performed all conditions required of him by the policy and had demanded payment of full benefits, "the Defendants have wrongfully, intentionally, and willfully refused and continue to refuse to pay the benefits due the Plaintiff under the policy of insurance." More specifically, he alleged that Farmington and Aetna have conducted a grossly inadequate investigation of his claim and have willfully failed to make a realistic evaluation of the claim or to provide plaintiff with a justifiable basis for denying his claim, and further failed (until only very recently) to make payments under the policy to the loss payee as required by Mississippi law. And he charges Farmington has acted in bad faith by denying his claim for benefits, refusing to timely apprise him of its intentions respecting the claim and failing to inform him of any reasonable or justifiable basis for denying the claim. For its part, Farmington asserts that it has not actually denied plaintiff's claim, but rather has thus far declined payment for a number of reasons, including the facts that (1) there is evidence that the fires

---

1. The court is unsure as to the basis upon which plaintiff has sued Aetna. The court recognizes that the complaint alleges that Aetna, along with Farmington, has failed to adequately investigate and has wrongly refused payment of plaintiff's claim; but Aetna did not issue the subject policy and there is otherwise no indication of any basis upon which Aetna might be liable.

were intentionally set, (2) plaintiff has failed to provide proper proofs of loss as required by the policy, and (3) plaintiff has failed to submit to an examination under oath and has thereby violated his duty of cooperation.

With respect to Porter's, plaintiff alleges that he had contracted with Porter's to place his insurance "with a reputable company which would insure his properties and provide prompt, quality service in the event of loss," and that Porter's, in violation of this duty, placed the coverage with a company that he "knew or should have known would be unable to meet its contractual obligations."

■ As an initial matter, plaintiff argues that removal was not proper because all defendants did not join in the notice of removal. More to the point, he states that the case must be remanded because one of the defendants, Porter's, did not sign the notice. However, as this court has previously recognized, it is not necessary that the allegedly fraudulently joined defendant join with the other defendants in the removal petition. *Moore v. Interstate Fire Ins. Co.*, 717 F.Supp. 1193, 1195 (S.D.Miss.1989). Plaintiff's position is without merit.

■ In determining whether removal was proper based on the alleged fraudulent joinder, the court must decide whether plaintiff has any possibility of establishing a valid cause of action against Porter's, the sole nondiverse defendant. *See Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 100 (5th Cir. 1990) (question is whether plaintiff has any possibility of recovery against the in-state defendant). *See also Tedder v. F.M.C. Corp.*, 590 F.2d 115, 117 (5th Cir.1979) ("If there is no arguably reasonable basis for predicting that state law might impose liability on the resident defendants under the facts alleged, then the claim is deemed fraudulent"). In making this determination in this case, the court has, as it must, resolved "all disputed questions of fact and all ambiguities in the controlling state law ... in favor of the non-removing party," but nevertheless concludes

that plaintiff has no possibility of recovery against Porter's.

■ Precisely what is meant by plaintiff's allegation that Porter's failed to place his coverage with a "reputable" company is unclear from his complaint.[2] In his memorandum in support of his motion, plaintiff alluded to Farmington's "ability to pay" as an issue, yet he has not alleged that Farmington has not paid his claim because it lacks the ability to do so. Rather, a review of his complaint would seem to suggest plaintiff's position to be that Farmington is *unwilling*, rather than unable to pay.

If there were an allegation in the pleadings or evidence that Farmington has failed to pay plaintiff's claim because it lacks the financial resources to do so, then plaintiff would likely have a viable claim against Porter's, if, that is, he could demonstrate that at the time Porter's secured the Farmington policy for plaintiff, Farmington's financial condition was such that it rendered Farmington an unreasonable risk. Defendants do not dispute that, for they acknowledge that while an insurance agent is not the guarantor of the financial condition or solvency of the company from which he obtains insurance, "[h]e is required ... to use reasonable skill and judgment [in his placement of coverage] with a view to the security of indemnity for which the insurance is sought, and a failure in that respect may render him liable to the insured for resulting losses." *Classic Motel, Inc. v. Coral Group, Ltd.*, 833 F.Supp. 593, 603 (S.D.Miss.1993) (quoting *Higginbotham & Assoc., Inc., et al. v. Greer*, 738 S.W.2d 45, 46 (Tex.Ct.App.-Texarkana 1987)). Defendants point out, though, that there is no allegation or evidence that Farmington is other than financially sound. Indeed, in this regard, while plaintiff notes that Farmington experienced losses in the years 1995 and 1996 of approximately $15,000,000 and 37,-000,000 respectively, the unrefuted evidence establishes that Farmington, which has been fully admitted, approved and licensed by the Mississippi Department of Insurance to do business in Mississippi, had, at the end of

2. Plaintiff observes in his affidavit that he had never heard of Farmington before Porter's placed his insurance with that company. The court presumes that plaintiff's unfamiliarity with the insurer is not advanced as a ground for, or evidence that the company was not "reputable."

1996, a policy surplus in excess of $132,000,-000.[3] Clearly, then, the company has the financial ability to pay the plaintiff's claim,[4] and to the extent that plaintiff is alleging that Porter's breached a duty to plaintiff by "plac[ing] the insurance with a company that he knew or should have known would be unable to meet its contractual obligations" due to insolvency, he has no possibility of recovery due to the lack of factual support for the claim.

■ Since Farmington's ability to pay is not at issue, then there is arguably presented the question of whether there is any possible basis for holding Porter's liable for Farmington's refusal to pay.[5] As regards such a potential claim, the court would first note that even if, as plaintiff implicitly contends, Porter's was plaintiff's agent for purposes of procuring insurance coverage, Porter's was not a party to the insurance contract between Farmington and plaintiff and therefore, under well-established Mississippi law, Porter's is not liable under the contract for the payment of benefits. *See Patton v. Aetna Ins. Co.,* 595 F.Supp. 533 (N.D.Miss.1984). The only party which might have had (or have) an obligation to pay benefits was Farmington. The court does recognize, of course, that under Mississippi law, insurance agents and adjusters, while not liable for ordinary negligence in performing their duties on behalf of the insurers, can "incur independent liability when [their] conduct constitutes gross negligence, malice, or reckless disregard for the rights of the insured." *Bass v. California Life Ins. Co.,* 581 So.2d 1087, 1090 (Miss. 1991) (quoting *Dunn v. State Farm Fire & Casualty Co.,* 711 F.Supp. 1359 (N.D.Miss. 1987)). Here, however, plaintiff has not alleged that Porter's performed any role in the investigation of his claim or was in any way involved in the decision to deny benefits, and he certainly has not alleged that Porter's committed any act in the claims evaluation or otherwise which would constitute "gross negligence, malice, or reckless disregard of the rights of the insured."

■ That leaves only one possible theory of recovery, and that is, that at the time it secured the coverage from Farmington, Porter's knew or had reason to know that Farmington would not promptly evaluate and pay plaintiff's valid claims for benefits.[6] Whether this is in fact asserted by plaintiff as a basis for recovery is difficult to discern, for while plaintiff's rebuttal memorandum is limited solely to the issue of Farmington's financial standing, plaintiff's argument in his initial memorandum does not foreclose the possibility that this is at least an alternative theory of liability. In that first brief, plaintiff cited a number of cases which have recognized that an insurance agent can be held liable if his negligence in the procurement of coverage defeats the insurance. *See Simpson v. M–P Enterprises, Inc.,* 252 So.2d 202, 207 (Miss. 1971) (if an agent or broker, with a view of

---

**3.** This is established by Farmington's 1996 annual statement, which was submitted by defendants in response to plaintiff's motion. The Fifth Circuit has specifically approved the use of a summary judgment-like procedure in deciding whether a party has been fraudulently joined, which includes the consideration of evidence beyond the pleadings. *See Carriere,* 893 F.2d at 100.

**4.** It is noted, too, that the financial information for the year ending 1996, while perhaps germane to the issue of Farmington's current ability to pay, is not, in fact, relevant to the issue of what Porter's "knew or had reason to know" when it placed the coverage, for the data which would have been available to Porter's at the time he obtained this coverage would have been that for 1995. And, while the 1996 annual statement reflects that Farmington had losses of $15,000,-000 for 1995, it also shows that the company had a policy surplus of nearly $170,000,000.

**5.** This is not clearly an issue since plaintiff has alleged only that Porter's knew or should have known that Farmington would be "unable" to pay the claim. As the court has ruled out "inability" to pay as a viable basis for plaintiff's claim, then, there would seem to be nothing more to discuss. The court will assume, though, strictly for the sake of argument and in an effort to be comprehensive, that plaintiff contends that Porter's is liable for Farmington's unwillingness to pay.

**6.** Though Farmington has indicated a number of reasons for its refusal thus far to pay plaintiff's claims, the court assumes for purposes of deciding this motion that plaintiff properly made his claim for benefits and that his claim was payable under the policy. *See Carriere,* 893 F.2d at 100 (requiring court to resolve contested fact issues in plaintiff's favor when analyzing claim of fraudulent joinder).

458

being compensated, agrees to procure insurance for another and through fault or neglect fails to do so, he will be liable for resulting damage); *Ritchie v. Smith*, 311 So.2d 642, 646 (Miss.1975) ("An agent owes the duty to his principal to exercise good faith and reasonable diligence to procure insurance on the best terms he can obtain, and any negligence or other breach of duty on his part which defeats the insurance he procures will render him liable for the resulting loss."). These cases recognize that where the policy procured does not provide the coverage requested and required by the insured, or simply fails altogether to procure any coverage, the agent can be held liable for negligence in the procurement of insurance. As to the agent's duty in procurement, the court in *Ritche* explained as follows:

> [A]n agent must faithfully carry out the instructions given him by his principal, his duty being not merely to obtain a policy, but holding himself out as being qualified to procure insurance, the agent is required to exercise the particular skill reasonably to be expected of one in that occupation and to have adequate knowledge as to the different companies and the variety of terms available with respect to the undertaking he has assumed.

*Id.* at 646. Even assuming that it is this duty, "the duty to have adequate knowledge as to the different companies," upon which plaintiff predicates his cause of action, he has no possibility of recovery since plaintiff has not alleged, intimated or adduced evidence that Farmington, which, again, had been licensed and approved by the State Department of Insurance to write coverage in this state, had a "reputation" for denying valid claims. For this, and all of the foregoing reasons, the court concludes that defendants have satisfied their burden to establish the fraudulent joinder of Porter's. It is, therefore, ordered that plaintiff's motion to remand is denied.