**George SKINNER, et al Plaintiffs**

**v.**

**USABLE LIFE, et al Defendants**

**No. CIV.A. 401CV92LN.**

United States District Court,
S.D. Mississippi,
Eastern Division.

Aug. 31, 2001.

Roman Ashley Shaul, Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Montgomery, AL, for Plaintiff or Petitioner.

Steven H. Begley, Roy H. Liddell, Wells, Marble & Hurst, Jackson, for Defendant or Respondent.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

Plaintiffs George Skinner, Bennie Calvert, Malikah Clemon, Velma Jenkins, Lucille Morris, Percy Reese and Theodore Washington have moved this court to remand this case to the Circuit Court of Noxubee County, Mississippi, from which it was removed by defendant USAble Life. USAble Life has responded in opposition to plaintiffs' motion. The court, having considered the motion and response, with attachments, concludes that the motion to remand should be denied.

Plaintiffs, all Mississippi residents, filed suit in state court on March 29, 2001, against USAble Life, an Arkansas company, and respective insurance agents, seeking to recover compensatory and punitive damages arising from alleged misrepresentations made in the sale of long-term disability coverage to plaintiffs under a group disability plan issued to the Noxubee County School District.[1] Thereafter, on April 30, 2001, USAble Life filed its notice

---

1. Plaintiffs' various theories of recovery include fraud, fraudulent misrepresentation, fraudulent inducement, breach of fiduciary duty and breach of duty of good faith and fair dealing.

of removal, basing federal subject matter jurisdiction on diversity of citizenship, pursuant to 28 U.S.C. § 1332 inasmuch as the named Mississippi defendants, Gilliam, Smith and Spencer, were fraudulently joined to destroy jurisdiction. Plaintiffs responded by filing a motion to remand on May 29, 2001, asserting that USAble Life cannot show that plaintiffs have no possibility of recovery against the resident defendants; therefore, complete diversity of citizenship is lacking.

According to plaintiffs' complaint, between 1993 and 1998, the resident defendants approached various individual plaintiffs seeking to induce them into purchasing disability insurance. Specifically, on February 3, 1993, defendant Gilliam approached plaintiff Calvert about purchasing disability insurance. Similarly, on October 2, 1995, defendant Spencer approached plaintiff Washington about purchasing disability insurance. Finally, on September 16, 1998, defendant Smith approached plaintiff Jenkins about purchasing disability insurance.[2] Plaintiffs allege in their complaint that at the aforementioned times, these resident defendants represented to plaintiffs that the policies would pay "full benefits" to them if they became disabled and were unable to work. Plaintiffs claim that resident defendants misrepresented or omitted to tell them that the policies were subject to mandatory deductions based on payments from Medicare, Medicaid, Social Security, worker's compensation and/or retirement benefits.

USAble Life contends that the resident defendants have been improperly joined

because there is no possibility of recovery against them; therefore, the court should not consider their citizenship in determining the propriety of removal. Specifically, in their affidavits included in the response to plaintiffs' motion to remand, Gilliam, Spencer and Smith state that plaintiffs were provided, on or before their purchase of the disability insurance, with insurance policies, certificates of insurance and brochures which clearly explain the method of disability payments.[3] Further, to support its claim of fraudulent joinder, defendant raises numerous defenses to plaintiffs' claims, most notably statute of limitations.

■ The removing party, which is urging jurisdiction on the court, bears the burden of demonstrating that jurisdiction is proper due to fraudulent joinder. *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir.1992); *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981). The Fifth Circuit has stated:

> The burden of persuasion placed upon those who cry "fraudulent joinder" is indeed a heavy one. In order to establish that an in-state defendant has been fraudulently joined, the removing party must show either that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts.

*B., Inc.*, 663 F.2d at 549.

■ In evaluating a motion to remand, the court considers summary judgment-type evidence to pierce the pleadings, in-

---

**2.** These specific dates were pled in plaintiffs' complaint. Resident defendants' affidavits, which were included in USAble Life's response to plaintiffs' motion to remand, reflect that these dates are not in dispute.

**3.** In their affidavits, the resident defendants state that the respective plaintiffs were all

given insurance policies, certificates of insurance and brochures when they originally enrolled in the group plan for the Noxubee County School District and were given an additional brochure when they subsequently bought additional disability policies. Plaintiffs have not offered any evidence to refute these assertions.

cluding pleadings, affidavits and deposition transcripts. *Hart v. Bayer Corp.*, 199 F.3d 239, 246–47 (5th Cir.2000). The evidence submitted by the parties must be construed in the light most favorable to the plaintiff. *Hart*, 199 F.3d at 246; *Dodson*, 951 F.2d at 42; *B., Inc.*, 663 F.2d at 549. Further, any unsettled law in the controlling state must be resolved in favor of the plaintiff. *Id.*

A finding of fraudulent joinder is only appropriate if the court finds that there is no possibility of recovery against the in-state defendants under state law. *Dodson*, 951 F.2d at 42–43; *B., Inc.*, 663 F.2d at 550. In other words, "where there have been allegations of fraudulent joinder … the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *B., Inc.*, 663 F.2d at 550 (citing *Bobby Jones Garden Apartments v. Suleski*, 391 F.2d 172, 177 (5th Cir.1968)). *See also Badon v. R.J.R. Nabisco, Inc.*, 236 F.3d 282, 286 (5th Cir.2000). If the court finds that there is a possibility of recovery, then there is incomplete diversity, and the cause of action must be remanded to the applicable state court. *Dodson*, 951 F.2d at 42–43; *B., Inc.*, 663 F.2d at 550.

Defendant raises several defenses supporting fraudulent joinder in the present cause of action, and the court examines statute of limitations first. Defendant argues that all of plaintiffs' claims against resident defendants are barred by Mississippi's three-year statute of limitations contained in Miss.Code Ann. § 15–1–49

(1999). On March 29, 2001, plaintiffs Calvert and Washington asserted claims for fraud, breach of fiduciary duty and breach of duty of good faith and fair dealing against defendants Gilliam and Spencer respectively. However, these claims, which arise out of the sale of disability policies, are clearly time barred. Calvert states in the complaint, and Gilliam does not dispute, he purchased his disability policy on February 3, 1993, more than three years before he filed suit. Similarly, Washington states in the complaint, and Spencer does not dispute, that he purchased his disability policy on October 2, 1995, more than three years before he filed suit.

■ However, Calvert and Washington argue that their claims against Gilliam and Spencer are timely because defendants fraudulently concealed the claims, thereby tolling the statute of limitations pursuant to Miss.Code Ann. § 15–1–67 (1999). Under the doctrine of fraudulent concealment, "the cause of action shall be deemed to have first accrued at … the time at which such fraud shall be, or with reasonable diligence might have been first known or discovered." Miss.Code. Ann. § 15–1–67. Here, defendant has presented uncontroverted proof that Calvert and Washington had in their possession a certificate of insurance and a brochure which defined the scope of coverage and detailed deductions for "other income" at the time the disability policies were purchased.[4] As a result, more than three years before filing suit, Calvert and Washington either knew or should have known through the exercise

---

**4.** The brochures given to Calvert and Washington state:

> Your monthly benefits will be reduced by income benefits from Worker's Compensation; benefits received under any other compulsory act or law; disability income from any group insurance plan of your employer, or government retirement system; benefits received for disability or retirement

under the employer's retirement plan; disability or retirement plan; disability or retirement benefits from the United States Social Security Act (primary and family); earnings received from any form of employment; or benefits provided under the mandatory portion of any group or individual automobile insurance policy.

of reasonable diligence that Gilliam's and Spencer's alleged representations were false. The court, having examined the brochures, determines that they are sufficiently clear concerning the policies to defeat any claim of fraudulent concealment. *See Cunningham v. Massachusetts Mutual Life Ins. Co.,* 972 F.Supp. 1053, 1056 (N.D.Miss.1997) (holding that plaintiff who possessed clear information about the terms of a policy was not allowed to use fraudulent concealment to toll the statute of limitations). Therefore, Calvert's and Washington's claims against defendants Gilliam and Smith are barred by the statute of limitations.

However, this is not the case with respect to plaintiff Jenkins, who also filed suit against defendant Smith for fraud, breach of fiduciary duty, and breach of duty of good faith and fair dealing. Jenkins purchased a disability policy from Smith on September 16, 1998, within three years of filing the present suit. Therefore, casting the facts in the light most favorable to Jenkins, her cause of action would not have accrued until September 1998. Because the complaint was filed in March 2001, Jenkins claims are obviously not barred by the statute of limitations. However the court concludes for other reasons that Jenkins has no possibility of recovery against Smith.

▮▮▮▮ The court turns first to the fraud claims.[5] To maintain a fraud claim, the plaintiff must prove nine elements:

1) a representation, 2) that is false, 3) that is material, 4) the speaker's knowledge of its falsity or ignorance of its truth, 5) the speaker's intent that the

---

**5.** The court notes that an agent for a disclosed principal can be individually liable for any tortious acts that are committed within the scope of his or her employment. *Hignite v. American General Life & Accident Ins. Co.,* 142 F.Supp.2d 785, 789 (N.D.Miss.2001); *Hart,* 199 F.3d at 247. The Mississippi rule concerning agent liability was explained in *Russell v. New York Life Ins. Co.,* No. 3:97CV006–D–A, 1997 WL 170317, *3 (N.D.Miss. March 4, 1997). In *Russell,* the court stated:

The Mississippi Supreme Court, in *American Fire Protection, Inc. v. Lewis,* noted that "an individual may be held jointly liable with a corporation for a tort he commits as an agent of the corporation." 653 So.2d 1387, 1391 (Miss.1995) (emphasis added) (citing *Kitchens v. Mississippi Ins. Guar. Ass'n,* 560 So.2d 129, 134 (Miss.1989)). Although Mississippi law sets out that an agent acting within the course and scope of his employment for a disclosed principal will not incur personal liability to third parties in the context of contractual duties, Mississippi courts have not extended that immunity to include actions based on tort law. *Newsome v. Shelter Gen. Ins. Co.,* 792 F.Supp. 1022, 1025 (S.D.Miss.1991) (citing *Wheeler v. Frito–Lay, Inc.,* 743 F.Supp. 483, 486 (S.D.Miss.1990)). An agent may incur personal liability for his own independent torts, whether or not he is acting within the course and scope of his employment. *Id.* If the agent is acting within the scope of his employment when his conduct turns tortious, then both he and his employer may incur liability for the wrongful actions. *Id.* *Russell,* 1997 WL 170317, at *3. The court in *Russell* acknowledged that the Mississippi Supreme Court has "muddied the waters a bit in this context in a 1991 case styled *Bass v. California Life Ins. Co.,* 581 So.2d 1087, 1090 (Miss.1991)." *Russell,* 1997 WL 170317, at *4. In *Bass,* the supreme court stated that they were "hesitant to hold adjusters, agents or other similar entities to a standard of ordinary negligence." *Bass,* 581 So.2d at 1090. As a result, the supreme court adopted the following standard for insurance adjusters and administrative agents: "[An agent] can only incur independent liability when his conduct constitutes gross negligence, malice, or reckless disregard for the rights of the insured." *Id.* The court in *Russell* expressed its uncertainty concerning the wisdom of creating a new standard for agents in this context. *Russell,* 1997 WL 170317, *4. In the present case, the heightened standard of care would not bar the possibility of individual liability against defendant Smith, who is an agent of USAble Life, for his alleged personal tortious conduct. *Newsome,* 792 F.Supp. at 1025–26.

hearer act upon it in the manner reasonably contemplated, 6) the hearer's ignorance of its falsity, 7) her reliance on its truth, 8) her right to rely thereon, and 9) her consequent and proximate injury. *American Income Life Ins. Co. v. Hollins,* No.1999–CA–00528–SCT, 2001 WL 695516, *6 (Miss. June 21, 2001). In order to recover under a theory of fraud, plaintiffs must demonstrate that reliance on the putative misrepresentations was reasonable or justifiable. *Arnona v. Smith,* 749 So.2d 63, 66–67 (Miss.1999); *Martin v. Winfield,* 455 So.2d 762, 764 (Miss.1984).

██ In the present case, plaintiffs argue that Smith's alleged representation to Jenkins that the disability policy would pay "full benefits" constituted fraud. However, an examination of the facts in the record indicates that these claims have no possibility of recovery because Jenkins could not reasonably rely on Smith's representation. Smith, in his affidavit, states that Jenkins, before the alleged representation, already possessed an insurance policy and certificate of insurance which explain how disability payments would be calculated. Jenkins possessed these documents because she had previously, through another agent, enrolled in a USAble Life disability plan. Further, Smith states that when Jenkins approached him about increasing her disability coverage, he provided her with an additional brochure that clearly explained what deductions would be made from disability payments.[6] As a result, Jenkins possessed an insurance policy, a certificate of insurance, and brochures which described how the disability payments were calculated at the time the alleged fraudulent representation was made. Based on these facts, which stand uncontrovered by Jenkins, the court concludes that Jenkins could not have been justified in relying on the representation made by Smith. *See Watson v. First*

*Commonwealth Life Ins. Co.,* 686 F.Supp. 153, 155 (S.D.Miss.1988) (affirming summary judgment on fraud claim by stating "[t]he uncontroverted evidence establishes that at the time of the alleged oral misrepresentation the actual terms of the loan commitment were available to Watson on the acknowledgment form, a short, simple document devoid of small print. Watson had no right to rely on the alleged misrepresentation."); *Barhonovich v. American Nat'l Ins. Co.,* 947 F.2d 775, 778 (5th Cir. 1991) (holding that insured could not reasonably rely on representations of insurance agent when the representations were clearly in conflict with the terms of the policy). As a result, Jenkins has no reasonable possibility of recovery against resident defendant Smith for any claims based on fraud.

██ In addition to the fraud claims, Jenkins claimed a breach of fiduciary duty against Smith. To maintain an action for breach of fiduciary duty, a fiduciary relationship must exist. *Lowery v. Guaranty Bank and Trust Co.,* 592 So.2d 79, 83 (Miss.1991). A fiduciary relationship includes both technical fiduciary relationships and informal fiduciary relationships, which exist simply "whenever one person trusts in or relies upon another." *Lowery,* 592 So.2d at 83. Mississippi courts have held that a fiduciary relationship can exist between an insurance agent and the insured. *See Ross–King–Walker, Inc. v. Henson,* 672 So.2d 1188, 1191 (Miss.1996); *Lowery,* 592 So.2d at 85; *Head v. United Ins. Co. of Am.,* 966 F.Supp. 455, 457 (N.D.Miss.1997) (construing Mississippi law). However, to recover, Jenkins may not argue "any mere theoretical possibility of recovery under local law—no matter how remote or fanciful"; instead, she must state "arguably a reasonable basis for predicting that state law would allow recovery." *Badon,* 236 F.3d at 286 n. 4.

6. *See supra* note 4.

■ In this case, Jenkins alleges that Smith breached his fiduciary duty by representing to her that the disability policy paid "full benefits." However, assuming that a fiduciary relationship exists, Jenkins does not explain how this statement breached any fiduciary duty, nor do plaintiffs ever identify any facts that would indicate such a breach. Examining the facts provided by both plaintiffs and defendant, this representation was not a breach of fiduciary duty because the policy would pay full benefits, subject to the deductions listed in the brochure, which was provided by Smith when the policy was purchased. Further, Jenkins was already enrolled in a disability policy with USAble Life; therefore, she should have been familiar with the terms and conditions of the policy. *See Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co.,* 584 So.2d 1254, 1257 (Miss.1991) (stating "a person is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract."); *American States Ins. Co. v. Natchez Steam Laundry,* 131 F.3d 551, 555 (Miss.1998) (applying *Godfrey* to insurance contracts). As the Fifth Circuit stated in *Badon,* a theoretical possibility of recovery is not enough; a reasonable basis must support the possibility of recovery. Jenkins' theory of recovery under breach of fiduciary duty is theoretical at best. As a result, the court concludes that Jenkins has no possibility of recovery against Smith for a breach of fiduciary duty.

■ Finally, the court turns to Jenkins' claim against Smith for breach of duty of good faith and fair dealing. Under Mississippi law, a duty of good faith and fair dealing is implied in every contract. *Cenac v. Murry,* 609 So.2d 1257, 1272 (Miss.1992); *Baldwin v. Laurel Ford Lin-*

*coln–Mercury, Inc.,* 32 F.Supp.2d 894, 898 (S.D.Miss.1998). However, an implied duty of good faith and fair dealing is only applicable to the performance or enforcement of a contract; it is not applicable to negotiation of the contract terms. *Cenac,* 609 So.2d at 1272; *Baldwin,* 32 F.Supp.2d at 899.

■ In the present cause of action, all allegations made by Jenkins concerning Smith arise out of acts taken before the insurance contract was formed. Jenkins has not made any allegations concerning the performance or enforcement of the contract; therefore, duty of good faith and fair dealing is inapplicable. The court holds that there is no possibility of recovery against defendant Smith for breach of the duty of good faith or fair dealing.

Because no possibility of recovery exists against resident defendants Gilliam, Spencer and Smith, the court concludes that these defendants were fraudulently joined. Therefore, it is ordered that plaintiffs' motion to remand this case to the Circuit Court of Noxubee County, Mississippi is denied.