**John Wayne JABOUR Plaintiff**

v.

**LIFE INSURANCE COMPANY OF NORTH AMERICA, Paul Revere Life Insurance Company, Combined Life Insurance Company and Ronnie Harvel Defendants**

**No. CIV.A.504CV159DCBJCS.**

United States District Court,
S.D. Mississippi,
Western Division.

March 31, 2005.

Dean Andrews, Jr., Attorney, Vicksburg, MS, Joel L. Dilorenzo, K. Stephen Jackson, PC, Birmingham, AL, for Plaintiff.

J. Kennedy Turner, III, Butler, Snow, O'Mara, Stevens & Cannada, Susan La-

tham Steffey, Michael W. Ulmer, Suzanne Marie Collipp, Watkins & Eager, Clifford K. Bailey, III, Kelly D. Simpkins, Wells, Marble & Hurst, Jackson, MS, for Defendants.

### *MEMORANDUM OPINION & ORDER*

BRAMLETTE, District Judge.

This cause is before the Court on the plaintiff's Motion to Remand [docket entry no. 12–1]. Having carefully considered the motion, responses, and briefs, as well as the applicable law, the Court finds as follows:

### *FACTUAL AND PROCEDURAL BACKGROUND*

On May 6, 2004, John Wayne Jabour, a Mississippi resident, brought this action in the Circuit Court of Warren County, Mississippi, seeking an unspecified amount of compensatory and punitive damages. The complaint states claims for negligence, fraud and breach of contract, arising out of three separate long-term disability insurance policies, issued by Life Insurance Company of North America, Paul Revere Life Insurance Company, and Combined Life Insurance Company, all non-resident corporations. The complaint further alleges that Ronnie Harvel, a Mississippi resident, acted as an agent for Paul Revere and Combined in connection with Jabour's purchase of long-term disability policies from these two companies in 1987 and 1999, respectively.

The corporate defendants removed the action on June 4, 2004, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332. They urge that removal was proper inasmuch as it is facially apparent that the amount in controversy exceeds $75,000.00, and Harvel has been fraudulently joined to defeat this Court's subject matter jurisdiction.[1] Jabour does not dispute that the

---

1. Alternatively, the corporate defendants, citing *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir.1996), maintain that

they have been fraudulently misjoined, such that they "should be severed and considered separately in determining whether complete

amount in controversy exceeds the requisite amount. He instead asserts that the corporate defendants have failed to demonstrate that there is no reasonable possibility of recovery against Harvel.

### A. The 1987 Paul Revere Policy

The facts, construed in the plaintiff's favor, regarding his claims against Harvel and Paul Revere, as gleaned from the complaint and Jabour's affidavit offered in support of his motion, are as follows:

In August, 1987, Jabour, an attorney and owner of a retail clothing store, The Hub of Vicksburg, received a mailing from the Mississippi Bar Association regarding life and disability insurance. Jabour then contacted Paul Revere which referred him to its agent, defendant Harvel. Harvel telephoned Jabour regarding long-term disability insurance products and sought an in-person meeting. Later that month, the two met at Jabour's store, where Jabour informed Harvel that he had been diagnosed with adrenomyloneuropathy, a progressively debilitating neurological disease. According to Jabour's affidavit, following the disclosure of his condition, "Harvel assured me that my condition did not exclude my right to benefits under the policy [that] he was promoting." *See* Affidavit of John Wayne Jabour at 2 (attached as Exhibit D to Plaintiff's Motion to Remand).

Based on this representation, Jabour requested and received a policy proposal from Harvel. On September 9, 1987, "relying on the terms and conditions set forth in this preferred professional proposal and on Mr. Harvel's oral representations regarding the proposal," Jabour applied for individual long-term disability with Paul Revere. *Id.* Specifically, he applied for a policy which would provide yearly coverage in the amount of $39,600.00, until age sixty-five and answered all questions truthfully, specifically disclosing on the application his diagnosis of adrenomyloneuropathy. According to Jabour, Harvel stated, "I would be entitled to receive both monthly and annual amounts as specified by the policy from the date of onset of my employment disability until I reached sixty-five years of age." *Id.* at 2–3. However, the policy which was actually issued to Harvel provided only $12,000.00 in benefits for twelve months and excluded coverage for his pre-existing condition of adrenomyloneuropathy.

In January or February 2001, Jabour made a written claim for long-term disability benefits. After he had provided documentation requested by Paul Revere, on September 1, 2001, Paul Revere denied Jabour's claim, stating that "[u]pon review of your file by our clinical consultant, we find that the documentation does not appear to support significant functional limitations in your occupation." *See* September 21, 2001 Letter from The Paul Revere Life Insurance Co. (attached as Exhibit K to Plaintiff's Complaint). Despite the denial, Paul Revere further wrote "to help you transition back into the workplace, we have agreed to pay you six (6) months of Total Disability benefits and close your claim." *Id.* Based on his conversation with Harvel in 1987, Jabour contends that Harvel misrepresented the policy's terms and induced Jabour to purchase it.

### B. The 1999 Combined Policy

According to his affidavit, in mid-September 1999, Jabour received an unsolicited telephone call from Harvel, who was now an agent for Combined. After the call, Harvel returned to Jabour's store and "made oral representations which induced me to once again purchase a long term disability insurance policy from" Combined. *See* Affidavit of John Wayne

Jabour at 3 (attached as Exhibit D to Plaintiff's Motion to Remand). During this visit, Harvel was able to observe Jabour, who now required the use of a motorized cart due to the deterioration of his condition. Jabour truthfully completed the application for insurance. Harvel accepted the application which sought $30,000.00 per year of disability income payable from the onset of the disability until Jabour's sixty-fifth birthday. The application was approved in January 2000 with an effective date of July 2000. After becoming totally disabled, Jabour made a claim for benefits which was denied in March 2002 due to Jabour's pre-existing neurological condition. Jabour argues that Harvel's misrepresentations induced him to purchase the Combined policy. This opinion will address each of Jabour's claims in turn.

### DISCUSSION

### I. Fraudulent Joinder

■ The removing party must prove that removal of this suit was proper because federal jurisdiction, in fact, exists. *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir.1993). Where, as here, the removing party alleges that jurisdiction is based on diversity of citizenship and charges that a defendant has been fraudulently joined merely to defeat jurisdiction, the removing party "has the burden of proving the fraud." *Laughlin v. Prudential Ins. Co.*, 882 F.2d 187, 190 (5th Cir. 1989). Fraudulent joinder is established if the removing party can demonstrate an "inability of the plaintiff to establish a cause of action against the non-diverse defendant." *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 461 (5th Cir.2003) (citing *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir.2003)).

■ As mentioned, the burden is on the removing party to establish fraudulent joinder. Under this standard, the plaintiff "may not rest upon the mere allegations or denials of [his] pleadings." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir.2000). In other words, the plaintiff cannot simply rely upon conclusory or generic allegations to survive a properly supported claim of fraudulent joinder. *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 392–93 (5th Cir.2000). Thus, the district court may "pierce the pleadings" and consider "summary judgment-type evidence" (e.g., affidavit and deposition testimony) when inquiring whether a resident defendant has been fraudulently joined. *Ross*, 344 F.3d at 462. While conducting this inquiry, however, the court must resolve all disputed questions of fact and ambiguities of state law in favor of the non-removing party, *see Ross*, 344 F.3d at 463, "but *only* when there exists an actual controversy, *i.e.*, when *both* parties have submitted *evidence* of contradictory facts." *Badon*, 224 F.3d at 394 (emphasis in original). A court should not, "in the absence of any proof, assume that the non-moving party could or would prove the necessary facts" to support its claims against a resident defendant. *Id.*

■ In the event the court, after resolving all disputed questions of fact and ambiguities of law in favor of the non-removing party, finds that there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder and hence no basis for asserting diversity of citizenship jurisdiction." *Jernigan*, 989 F.2d at 816.

### II. Harvel's Liability

■ Jabour's complaint avers state claims against Harvel for negligence/wantonness, fraud/bad faith, and breach of contract. Initially, it is clear that as an agent for a disclosed principal, Harvel can incur no contractual liability. *See Jenkins v. Farmington Cas. Co.*, 979 F.Supp. 454,

457 (S.D.Miss.1997) (agent who is not party to insurance contract is not liable for payment of contractual benefits). Similarly, it is clear that Harvel, as a non-party to the contract had no implied duty of good-faith and fair-dealing with regard to the performance of the contract and thus, cannot be liable under a bad-faith theory of recovery. *Bass v. California Life Ins. Co.,* 581 So.2d 1087, 1090 (Miss.1991).

■ With regard to the claims of negligence and fraud, the complaint charges that Harvel "negligently and/or wantonly failed to inform [Jabour] of [or specifically concealed from him] the terms, limitations and/or exclusions of the Paul Revere policy that [he] actually purchased." *See* Plaintiff's Complaint at 17. Under Mississippi law, insurance agents and adjusters, while not liable for ordinary negligence in performing their duties on behalf of the insurers, can "incur independent liability when [their] conduct constitutes gross negligence, malice, or reckless disregard for the rights of the insured." *Bass,* 581 So.2d at 1090 (*quoting Dunn v. State Farm Fire & Casualty Co.,* 711 F.Supp. 1359 (N.D.Miss. 1987)). In other words, agents for insurance companies can be held liable for conduct that constitutes an independent tort. *Gallagher Bassett Services, Inc. v. Jeffcoat,* 887 S.2d 777, 785 (Miss.2004). Jabour contends that Harvel fraudulently misrepresented the terms of the insurance policies. Thus, the issue before the Court is whether there is a reasonable possibility that Jabour can sustain his claim of fraudulent misrepresentation against Harvel. This opinion will now address the representations made by Harvel during the sale of the 1987 Paul Revere policy.

## A. The 1987 Paul Revere Policy

■ Jabour avers that "Mr. Harvell [sic] assured me that I would be entitled to both monthly and annual amounts as specified by the policy from the onset date of my disability until I reached 65 years of age ... [and] Mr. Harvell [sic] assured me that my condition did not exclude my rights to benefits under the policy that he was promoting." *See* Affidavit of John Wayne Jabour at 2 (attached as Exhibit D to Plaintiff's Motion to Remand). Mississippi law requires that Jabour prove the following to sustain his claim of fraudulent misrepresentation: (1) Harvel made a representation, (2) the representation was false and material, (3) Harvel knew it to be false, (4) Harvel intended that Jabour act upon the representation, (5) Jabour was unaware of the representation's falsity, (6) Jabour relied on the truth of the representation, (7) Javour had a right to rely on the representation, and (8) Jabour suffered consequent and proximate injury. *Howard v. CitiFinancial, Inc.,* 195 F.Supp.2d 811, 824 (S.D.Miss.2002) (citing *Levens v. Campbell,* 733 So.2d 753, 761–62 (Miss. 1999)). Even assuming that Harvel's alleged representations were false, Jabour must prove that he justifiably relied upon them, *GMAC v. Baymon,* 732 So.2d 262, 270 (Miss.1999).

■ The Mississippi Supreme Court counsels that "a person is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract." *Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co.,* 584 So.2d 1254, 1257 (Miss.1991). In *Skinner v. USAble Life,* the plaintiffs alleged that the defendant insurance company's agents orally misrepresented the extent of the benefits that would be paid under the disability policies the plaintiffs purchased. *Skinner v. USAble Life,* 200 F.Supp.2d 636, 641 (S.D.Miss.2001). The *Skinner* court held that the plaintiffs could not sustain their claims of fraudulent misrep-

resentation inasmuch as they could not prove justifiable reliance upon the agents' alleged representations since the plaintiffs were provided an insurance policy, a certificate of insurance, and brochures which all described the exact terms of the policy. *Skinner*, 200 F.Supp.2d at 641. In contrast, a Mississippi district court granted a motion to remand after finding that the plaintiffs were fraudulently induced to purchase insurance policies based on the defendant agent's representations. *Anderson v. Equitable Life Assurance Society of the United States*, 248 F.Supp.2d 584, 592 (S.D.Miss.2003). The *Anderson* court determined that the policies did not include any specific language to contradict the misrepresentations made by the agent. *Anderson*, 248 F.Supp.2d at 592. As a result, the plaintiffs were justified in relying on the misrepresentations made by the agent. *Id.*

■ Turning to the facts of the present case, the 1987 policy encourages Jabour, an attorney, to read the entire policy carefully. *See* December 1, 1987 The Paul Revere Life Insurance Co. Insurance Policy Issued to John W. Jabour at 1 (attached as Exhibit I to Plaintiff's Complaint) ("READ YOUR POLICY CAREFULLY. It is a legal contract between you and us"). On page six of the policy, it defines the term "sickness" as any "sickness or disease which first manifests itself after the date of issue and while your policy is in force." *See Id.* at 6.

Moreover, attached to the policy is a modification that states "THE INSURED IS NOT COVERED FOR ANY LOSS RESULTING FROM ANY RESIDUALS OR PROGRESSION OF NEUROLOGICAL DISEASE." *Id.* Even if Harvel did make a representation to Jabour that his preexisting condition would be covered by the policy, Jabour was not justified in relying on any representation inasmuch as the policy's language informed Jabour that his preexisting condition was excluded from the policy's coverage. Jabour cannot establish a claim of misrepresentation against Harvel.

Jabour cites *Jefferson Life & Casualty Co. v. Johnson*, 238 Miss. 878, 120 So.2d 160, 162 (1960),[2] and *American Income Life Ins. Co. v. Hollins*, 830 So.2d 1230, 1237 (Miss.2002),[3] in support of an argument that an insurer can be estopped from relying on the contractual exclusion, if its agent, vested with apparent authority, either represented that the exclusion would not apply or omitted material information about Jabour's pre-existing condition from the application. These cases touch on the insurer's potential liability and not the agent's. Nonetheless, the facts of the present case do not demonstrate that Harvel failed to inform Paul Revere of the pre-existing condition. In fact, it is obvious that Harvel did tell Paul Revere of the condition as it was specifically excluded.

---

**2.** The Mississippi Supreme Court addressed the question of when an insurer can be said to have waived its right to rely on a violation of policy provisions to cancel a policy wherein "an agent by act or omission, fails to correctly write down the answer to questions propounded to the applicant" or "when an agent applies incorrect information without asking the applicant." *Jefferson Life*, 120 So.2d at 162

**3.** In this case, the insurer had sought to rescind the policy based on the insured's al-

leged misrepresentation in the policy application. *Am. Income Life Ins. Co.*, 830 So.2d at 1235. The insured contended that the agent was aware of her pre-existing condition, had taken charge of her application and had omitted this material information. *Id.* In concluding that the policy could not be rescinded nor the exclusion relied upon, the Mississippi Supreme Court stated, "We and other courts have held insurers to be bound by the actions of their agents acting within the scope of apparent authority, regardless of the policy's actual terms." *Id.* at 1237.

Furthermore, Jabour did not file this lawsuit alleging claims arising from the sale of the 1987 policy until 2004. His claims for misrepresentation and gross negligence against Harvel are governed by the three-year statute of limitations. *See* Miss.Code Ann. § 15–1–49. Therefore, the claims against Harvel are barred by the statute of limitations unless the statute is tolled by the discovery rule or by fraudulent concealment. *Smith,* 286 F.Supp.2d at 788. Under Mississippi law, "the statute of limitations commences to run in any event at the time the fraud is discovered, or at such time as the fraudulent concealment 'with reasonable diligence might have been first known or discovered.'" *Rainwater v. Lamar Life Ins. Co.,* 207 F.Supp.2d 561, 568 (S.D.Miss.2002) (quoting Miss.Code Ann. § 15–1–49). In order to prove concealment, a plaintiff must prove subsequent affirmative acts of concealment by the defendant and due diligence on the plaintiff's part. *Andrus v. Ellis,* 887 So.2d 175, 181 (Miss.2004) (applying Miss.Code Ann. § 15–1–67). "Proof of [the defendant's acts] must also be coupled with proof that despite his or her due diligence, the plaintiff was unable to discover the claim." *Andrus,* 887 So.2d at 181. Jabour has not alleged any affirmative acts made by Paul Revere or Harvel that prevented him from discovering his claim against Harvel. A review of the 1987 policy reveals that it is sufficiently clear as to its exclusion of Jabour's condition to have placed Jabour on notice, at the time of the signing and the receipt of the policy, of any alleged misrepresentation made by Harvel. Inasmuch as Jabour signed the 1987 policy and received a copy of it, his claim against Harvel for misrepresentation accrued at the time of the signing and receipt of the policy. Jabour's claim against Harvel as to the 1987 policy is barred by the three-year statute of limitations. In sum, Jabour cannot establish a claim against Harvel with regard to the 1987 insurance policy since (1) even assuming there was a misrepresentation, Jabour cannot prove that he was justified in relying on any misrepresentation, and (2) Jabour's claim is barred by the statute of limitations. The Court now turns to the claims against Harvel as they relate to his actions taken in his capacity as an agent for Combined.

**B. The 1999 Combined Policy**

Jabour alleges that in mid-September of 1999 Harvel returned to his store and "made oral representations which induced me to once again purchase a long term disability insurance policy from" Combined. *See* Affidavit of John Wayne Jabour at 3 (attached as Exhibit D to Plaintiff's Motion to Remand). As previously mentioned, in order to sustain his claim of misrepresentation, Jabour must prove (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury. *Levens v. Campbell,* 733 So.2d 753, 761–62 (Miss.1999). Jabour has the burden of proving each of these elements by clear and convincing evidence. *Levens,* 733 So.2d at 761. Jabour, however, has not provided the Court with a specific representation made by Harvel. As a result, he cannot prove that what Harvel said was false, or that he justifiably relied upon any of the alleged statements. Without knowing the contents of the alleged representations, the undersigned can only speculate as to what Harvel said to Jabour. Therefore, Jabour has failed to aver sufficient facts to establish each element of his claim. *See Burden v. General Dynamics Corp.,* 60 F.3d 213, 221 (5th Cir.1995) (affirming

district court's finding of fraudulent joinder where the plaintiff did not aver sufficient facts to meet burden of proving each element of his claim of intentional infliction of emotional distress).

Furthermore, as with the claim of misrepresentation arising from the sale of the 1987 policy, Jabour's claim of misrepresentation against Harvel based on the 1999 Combined policy is also barred by the statute of limitations. Jabour filed the present lawsuit in state court on May 6, 2004. "Therefore, barring some applicable exception to the three-year statute of limitations," Jabour must demonstrate that his cause of action accrued on or after May 6, 2001. *American Bankers' Ins. Co. of Fla. v. Wells*, 819 So.2d 1196, 1200 (Miss.2001). Jabour, however, admits that he received a copy of the 1999 policy and that the policy went into effect in July 2000. *See* Plaintiff's Complaint at 25. Moreover, Jabour has not averred that either Harvel or Combined has undertaken any affirmative acts to conceal Jabour's claim. Therefore, Jabour's claim of misrepresentation against Harvel is also barred by the three-year statute of limitations. In sum, as with his claim against Harvel arising from the sale of the 1987 policy, Jabour cannot establish a claim against Harvel with regard to the 1999 Combined policy since (1) he cannot prove the elements of his claim of misrepresentation and (2) his claim is barred by the statute of limitations.

### CONCLUSION

Based on the reasoning and authority set forth above, the Court concludes that the removing defendants have demonstrated there is no reasonable basis for predicting that state law might impose liability upon the resident defendant. Thus, the requirements of 28 U.S.C. § 1332(a) are met, and the plaintiff's Motion to Remand shall be denied. The fraudulently joined defendant shall be dismissed from this suit. *Griggs v. State*

*Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999). Accordingly,

IT IS HEREBY ORDERED that the plaintiff's Motion to Remand [**docket entry no. 12–1**] is not well-taken and is hereby **DENIED**;

IT IS FURTHER ORDERED that defendant, Ronnie R. Harvel is **DISMISSED** from this action;

IT IS FURTHER ORDERED that Ronnie R. Harvel's Motion to Dismiss, or in the alternative, Motion for Summary Judgment [**docket entry no. 4–1**] is **MOOT**.

The parties shall notify United States Magistrate Judge Sumner's office of the Court's denial of the motion to remand, so that a scheduling order can be entered.