**Donna ROGERS and Homer Rogers, Plaintiffs**

v.

**NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY; Larry Whitehead; The Nowell Agency; and Stacy Beckwith, Defendants.**

**Civil Action No. 3:06CV36LN.**

United States District Court,
S.D. Mississippi,
Jackson Division.

May 12, 2006.

Wayne E. Ferrell, Jr., Attorney, Jackson, MS, for Plaintiff.

WIlliam C. Griffin, Eric Joseph Dillon, Currie, Johnson, Griffin, Gaines & Myers, Jackson, MS, for Defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of plaintiffs Donna Rogers and Homer Rogers to remand pursuant to 28 U.S.C. § 1447. Defendant Nationwide Property and Casualty Company (Nationwide) has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, concludes that plaintiffs' motion should be denied.

In the wake of a January 28, 2005 fire which destroyed their home, plaintiffs Donna Rogers and Homer Rogers sought to recover for their loss under their homeowners policy with Nationwide. After initially tendering plaintiffs a check for living expenses on the day of the fire, Nationwide undertook an investigation of the claim through its adjuster, Larry Whitehead, and ultimately denied the claim based on information that the fire was intentionally set in two places in the home,

that the Rogers were experiencing financial difficulties prior to the fire and that Homer Rogers had the opportunity to set the fires.[1] Following that denial, plaintiffs filed the present action in the Circuit Court of Rankin County, Mississippi, against Nationwide and Whitehead, and also against the Nowell Agency and Stacy Beckwith, which were alleged to have sold the subject policy to plaintiffs, alleging various claims based on the denial of their claim.

Nationwide, a nonresident company, removed the case based on diversity jurisdiction, contending that all of the three named resident/nonresident defendants, Whitehead, the Nowell Agency and Beckwith, have been fraudulently joined to defeat diversity jurisdiction. Plaintiffs promptly moved to remand, arguing that the resident defendants are properly joined and that remand is thus required.

■ The relevant question here presented is whether Nationwide has shown that there is no reasonable possibility of recovery against any of the non-diverse defendants in state court. *See Smallwood v. Illinois Cent. R.R.*, 385 F.3d 568, 573 (5th Cir.2004) (en banc). A mere theoretical possibility of recovery is insufficient. *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir.2003).

The court first turns to plaintiffs' allegations/claims against the Nowell Agency and Beckwith. Plaintiffs allege in their complaint that they purchased the subject homeowners policy from defendants Beckwith and The Nowell Agency and "relied upon their professional advice and representations as to the type of policy; the necessary amount of insurance coverage; the language and wording of the various

---

1. Plaintiffs' motion to remand includes a request to strike portions of the notice of removal, and in particular, references therein that tend to suggest the Rogers were involved in burning their home. The request to strike is not well taken.

types of insurance coverages; deductibles; and endorsements to the policy," and that Beckwith and The Nowell Agency "represented to the Plaintiffs that they would have full coverage and the policy would cover most of the perils (including loss by fire) that were a threat to them and their house." They further charge that Nationwide, Beckwith and The Nowell Agency "represented and warranted to the Plaintiffs ... that they would promptly and fairly pay any and all claims of the Plaintiffs and all other claims which were covered by the policy," and "that they offered fair and prompt claims services to its [sic] insureds and those claiming under the terms of the Nationwide policy," and yet when plaintiffs submitted a proper claim under the policy for their fire loss, "Nationwide, instead of promptly and fairly paying the Plaintiffs' claims, unreasonably delayed processing Plaintiffs' claims and ... Nationwide ha[s] refused to timely pay the Plaintiffs' claims." Plaintiffs conclude that all defendants, including Beckwith and The Nowell Agency, wrongfully delayed and ultimately wrongfully, intentionally and in bad faith denied payment under the policy in violation of the terms of the contract and in breach of their duties of good faith and fair dealing, and that all defendants "set about on a course of conduct to annoy and harass the Plaintiffs and to avoid or delay paying the Plaintiffs' claim."

In response to plaintiffs' motion to remand, Nationwide first asserts that plaintiffs' putative claims against Beckwith premised on her alleged conduct in connection with the sale of the subject policy cannot possibly succeed inasmuch as Beck-

with, as attested in her affidavit accompanying Nationwide's response, did not sell the subject policy to plaintiffs and never talked to plaintiffs or made any representations to them of any sort.

■ Nationwide further points out that while plaintiffs allege that Beckwith and The Nowell Agency made unspecified "representations" relating to the policy and its coverage, they do not allege that these defendants made anything that could possibly be construed as an actionable misrepresentation. They do not allege any representations regarding the policy or its coverage were untrue or incorrect. And though they do implicitly charge that the alleged representation that Nationwide would provide "prompt" and "fair" claims processing was not true, such a representation would not be an actionable misrepresentation because it is not a statement of existing fact. *See Addison v. Allstate Ins. Co.,* 58 F.Supp.2d 729, 732–33 (S.D.Miss. 1999) (concluding that allegations of promises and/or representations were conclusory and generic in nature and hence insufficient, as a matter of law, to state a claim). Finally, while plaintiffs allege they relied on Beckwith's and The Nowell Agency's "professional advice and representations," plaintiffs do not allege that these defendants failed to procure adequate and proper coverage for them,[2] and in any event, it is manifest that plaintiffs' alleged harm in this case is not the result of a failure to procure a policy which provides adequate and proper coverage but rather is the result of Nationwide's failure to pay benefits which plaintiffs contend are, in fact, payable under the policy. Accordingly, plain-

---

**2.** Under Mississippi law, "[a]n insurance agent owes the duty to his principal to exercise good faith and reasonable diligence to procure insurance on the best terms he can obtain, and any negligence or other breach of duty on his part which defeats the insurance he procures will render him liable for the resulting loss." *First United Bank of Poplarville v. Reid,* 612 So.2d 1131, 1137 (Miss. 1992). Plaintiffs have made no such claim here.

tiffs have no possibly cognizable claim against Beckwith or The Nowell Agency for any representations or actions in connection with the sale of the policy.

■■■ Plaintiffs' further allegations throughout the complaint that Beckwith and The Nowell Agency breached the contract and their implied duties of good faith and fair dealing in failing to pay benefits under the insurance contract, and to do so in a timely manner, likewise do not present a viable claim for relief against these defendants. Mississippi law is clear: an agent of a disclosed principal is not a party to his principal's contract and cannot be liable for its breach. *Jabour v. Life Ins. Co. of North America,* 362 F.Supp.2d 736, 740–41 (S.D.Miss.2005). *See also Jenkins v. Farmington Cas. Co.,* 979 F.Supp. 454, 457 (S.D.Miss.1997) (agent who is not party to insurance contract is not liable for payment of contractual benefits). "Similarly, it is clear that [an agent], as a non-party to the contract ha[s] no implied duty of good-faith and fair-dealing with regard to the performance of the contract and thus, cannot be liable under a bad-faith theory of recovery." *Jabour,* 362 F.Supp.2d at 736.

■■■ An agent may incur liability under Mississippi law independent of the insurance contract for conduct which is grossly negligent, malicious or which shows a reckless disregard for the rights of the insured. *See Gallagher Bassett Servs., Inc. v. Jeffcoat,* 887 So.2d 777, 785 (Miss.2004) (citing *Bass v. California Life Ins. Co.,* 581 So.2d 1087, 1089 (Miss.1991)). "In other words, agents for insurance companies can be held liable for conduct that constitutes an independent tort." *Jabour,* 362 F.Supp.2d at 741 (citing *Gallagher).* Although plaintiffs allege generally that the actions of all defendants, including Beckwith and The Nowell Agency, in connection with the investigation, adjustment and denial of their claim amount to "intentional wrongs constituting intentional torts," as to Beckwith and The Nowell Agency, these are conclusory allegations at best, for plaintiffs certainly have not identified any actions by either of these defendants that could potentially subject them to liability on this theory. *See Peters v. Metropolitan Life Ins. Co.,* 164 F.Supp.2d 830, 834 (S.D.Miss.2001) (holding that allegations against non-diverse defendants "must be factual, not conclusory, because conclusory allegations do not state a claim"). Indeed, plaintiffs do not allege any facts suggesting involvement by Beckwith or The Nowell Agency in investigating, adjusting or denying their claim, and as is made clear in the uncontradicted affidavits of Mike Nowell and Beckwith, The Nowell Agency and Beckwith do not investigate claims; they do not adjust claims; they do not make payment on claims if payment is due; and they do not have any input in the investigation or adjustment of claims. For all these reasons, it is manifest that plaintiffs have no possibility of recovery against Beckwith or The Nowell Agency.

■■■ As alleged in plaintiffs' complaint, Larry Whitehead, an employee of Nationwide, was the claims representative assigned to investigate and adjust their claim. The gist of plaintiffs' allegations against Whitehead is that he and Nationwide, instead of promptly paying plaintiffs' claim, "engaged in a course of action to find reasons to deny Plaintiffs' claims and/or the delay [sic] paying Plaintiffs' claims," and after much needless delay, refused to pay plaintiffs' claim without any legitimate or arguable reason, all of which constitute a breach of the insurance contract, a breach of defendants' implied duty of good faith and fair dealing, and was intentional, or so grossly negligent and in reckless disregard of plaintiffs' rights as to

constitute an independent tort by Whitehead, namely, intentional infliction of emotional distress.

Of course, for the reasons stated *supra*, as a nonparty to the contract of his disclosed principal, Nationwide, Whitehead cannot be held liable for breach of contract, or for breach of the duty of good faith and fair dealing, and the question becomes whether plaintiffs' complaint discloses any other potentially viable claim. In this vein, plaintiffs' repeated incantation in their complaint that Whitehead's actions amounted to gross negligence, intentional misconduct, reckless, willfulness, wantonness, and the like, is perhaps understandable, given that "an insurance adjuster ... may not be held liable for simple negligence in connection with adjusting a claim," but rather " 'can only incur independent liability when his conduct constitutes gross negligence, malice, or reckless disregard for the rights of the insured'." *Gallagher*, 887 So.2d at 784 (quoting *Bass*). The court in *Gallagher* clarified and emphasized this principle, stating,

> [A]n insurance adjuster, agent or other similar entity may not be held independently liable for simple negligence in connection with its work on a claim. Such an entity may be held independently liable for its work on a claim if and only if its acts amount to any one of the following familiar types of conduct: gross negligence, malice, or reckless disregard for the rights of the insured.

*Id.* The fact, though, that plaintiffs have used the magic words does not mean that they thus have the requisite possibility of recovery against Whitehead as would secure remand. In the court's opinion, plaintiffs have no reasonable possibility of recovery against Whitehead based on the allegations of their complaint.

Plaintiffs' complaint is replete with their conclusory allegation that Whitehead engaged in conduct which was intentional, grossly negligent or in reckless disregard of their rights; but as with Beckwith and The Nowell Agency, they fail to identify *any* conduct that would so qualify. There are, in fact, few factual allegations at all in plaintiffs' complaint. The only arguable factual allegation relating to Whitehead's adjustment of their claim is plaintiffs' charge that he and Nationwide engaged in a course of conduct designed to delay, and ultimately deny payment of plaintiffs' claim, with respect to which charge they specifically allege that Nationwide and Whitehead, "in an effort to defeat and/or delay payment of benefits to the Plaintiffs, required the Plaintiffs to submit additional qualifying tasks, including but not limited to" allowing Nationwide to inspect the property on numerous occasions; supplying financial information, including income records, tax returns, bank account records, credit card statements, mortgage payments, etc., covering a period of three years; and submitting to statements under oath.

Merely requiring insureds to allow inspections—even numerous inspections—of the insured property, to provide information regarding their financial condition and to submit to examinations under oath hardly qualifies as intentional or reckless misconduct. Rather, all of these "additional qualifying tasks" plaintiffs complain were required of them by Whitehead in his adjustment of their claim are manifestly legitimate aspects of any fire loss investigation. In short, it cannot reasonably be said that an investigation by Whitehead which consisted of numerous inspections of the property, review of several years of the insureds' finances and consideration of the insureds' sworn testimony constituted intentional or grossly negligent conduct or conduct in reckless disregard of the insured's rights; and as plaintiffs have sug-

gested nothing more that Whitehead did that could so qualify, they have no possibility of recovery against him.

Based on the foregoing, the court concludes that plaintiffs' motion to remand is not well taken and should be denied.

SO ORDERED.